FULLER *against* THE TRUSTEES OF THE ACADEMIC SCHOOL IN PLAINFIELD.

One of the attributes of a corporation aggregate, is immortality.

Therefore, where the plaintiff in a writ of *mandamus,* averred, that in *October,* 1825, there was, and for more than thirty years antecedent thereto there had been, a corporation, established by the legislature of the state, this was held to be a sufficient averment of its existence on the 14th of *February,* 1826.

Where the plaintiff in a writ of *mandamus,* averred, that the corporation was established by the name of the *Trustees,* &c.; that the plaintiff was one of the trustees, duly elected, and enjoying the rights and privileges belonging to him as trustee; and that he continued to hold and exercise his said office, until

he was removed therefrom ; it was held, that the office of trustee, its tenure and duration, and the privileges appertaining thereto, were sufficiently alleged.

It is not a fatal objection to a writ of *mandamus* that it is directed to the members of a corporation, instead of the corporation by its corporate name.

Objections to a writ of *mandamus*, merely technical, must be taken *in limine*, on a motion to quash. and cannot prevail after the return.

Where *A., B.* and others, who had established a school, and erected buildings for its accommodation, obtained, on their application, from the legislature of the state, an act constituting nine of the proprietors, and such other persons as they should elect, not exceeding thirteen, and their successors, a body politic, capable of holding property of a certain annual value, of suing and being sued, of managing the affairs of the school, of exercising other powers usually conferred on corporations, of filling all vacancies made in their number, by the death or removal of any member or members, with the power of displacing or superseding all persons appointed by or under the corporation ; it was held, that these members had the powers. and only those, delegated to them in the charter, expressly, or by fair implication ; that they were the only visitors of the school ; and that they were subject to the general law of the land, to be administered by the superior court.

The clause in such charter of incorporation, vesting the trustees with power to fill any vacancies occasioned by death or *removal*, refers, in the latter term, to a change of residence only, and does confer the power of amotion.

If the members of a corporation have the power of amotion, as incidental and inherent, they cannot exercise it, except for just cause.

Where the return, by the members of a corporation, to a writ of *mandamus*, complaining of the amotion of a member, and seeking his restoration, alleged, as the grounds of amotion, 1st, disrespectful and contemptuous language towards his associates, and 2ndly, neglect of official duty in not acting on committees ; it was held, that these charges were insufficient to justify an amotion.

The place of a trustee in an eleemosynary corporation, though no emoluments are attached to it, is yet a franchise of such a nature, that a person improperly dispossessed of it, is entitled to redress by writ of *mandamus*.

This was a writ of *mandamus*, on the complaint of *Siah Fuller*, directed to the *Trustees of the Academic School in Plainfield*, requiring them to restore the plaintiff to the office of trustee in that institution, or to appear before the superior court, and shew sufficient cause to the contrary.

The complaint stated, that on the 8th of *October*, 1825, there was, and for more than thirty years antecedent thereto there had been, in the town of *Plainfield*, a body politic and corporate, created and established, by the legislature of this state, by the name of *The Trustees of the Academic School in Plainfield* ; that on said 8th of *October*, 1825. the plaintiff was one of the trustees of that institution, duly elected, and in the exercise of said office, and in the enjoyment of the rights and privileges thereunto appertaining ; that on the 14th of *February*, 1826,

*Windham,*
July,
1827.

*Fuller*
*v.*
Plainfield
Academic
School.

*Windham,*
July,
1827.

Fuller
*v.*
Plainfield
Academic
School.

he continued to hold and exercise his said office as trustee, when the trustees held a meeting in *Plainfield,* nine out of thirteen, the whole number authorized by the charter, being present, and a majority of those thus assembled proceeded, by their vote, to remove and expel the plaintiff unwarrantably, and without law or right, from his said office of trustee ; in consequence of which he has ever since been denied all the rights and privileges connected with his said office ; concluding with a profert of the charter, and of the records of the corporation. To this complaint the plaintiff annexed an *affidavit* of the truth of the facts therein stated.

The writ of *mandamus* issued thereon, was directed thus : " To *Orrin Fowler, George Middleton, Levi Robinson, Elkanah C. Eaton, Daniel Wheeler, Erastus Lester, Joseph Eaton, Joseph S. Gladding, Luther Smith, William Kinne, Roger Coit,* and *James Gordon,* all of *Plainfield,* in *Windham* county, and all trustees of the *Academic School* in said *Plainfield,* who constitute the whole board of trustees and the entire corporation."

The return contained the following statement. Previous to the year 1784, a school was established in the town of *Plainfield,* for the cultivation of the higher branches of education. A few individuals then living, from their own private funds, began and completed the necessary buildings. This school has been continued, by the liberal patronage of a small part of the community, fostered and sustained by individual efforts, and by individual contributions. For the purpose of securing the buildings, giving permanence to the establishment, and affording a regular and efficient administration of its concerns, an application was made, in 1784, to the legislature for an act of incorporation. *John Douglass, Joseph Eaton* and others were formed into a body corporate, and were to constitute a board of trustees and overseers of the school. To this board and their successors was given the power of removing the members of the board, and filling all vacancies that should happen therein, by the following provision in the act of incorporation : " And in case of the death or *removal* of any member or members of said corporation, the surviving or remaining members may elect others to supply the vacancies." To a place in the board no emolument is annexed ; the trust being one, which is to be performed at individual expense, for the public good.

*Windhan,*
July,
1827.

Fuller
*v.*
Plainfield
Academic
School.

In justification of the amotion complained of, the return al-
leged, that *Siah Fuller*, one of the board, wholly regardless of
the obligations of his trust, and the respect due to the board,
has pursued a course of conduct repugnant to his duty as a
member thereof, and calculated to introduce dissension, and to
degrade and disparage the said board in public estimation ; and
to effect this purpose, has wholly misrepresented the official
doings of the board, and unjustly arraigned and impeached their
motives.

That a meeting of the board was held on the 16th of *January,*
1823, for the purpose of making some provision for the instruc-
tion of the school, during the disability of the instructor, Mr.
*Rinaldo Burleigh,* which was at first supposed to be temporary ;
when it was proposed, for the first time, to the board, to make
a permanent change in the school ; and this measure was
adopted from a belief that the disability of Mr. *Burleigh* would
be permanent, and without any alleged incompetency as an in-
structor. And the said *Siah Fuller,* knowing these facts, and
intending to cast upon the board the imputation of deceit and
fraudulent conduct, represented, that the meeting was called
for the express purpose of removing Mr. *Burleigh* from the
school; and that a plan had been adopted, and for a long time
pursued, to effect that object ; and that the gentleman who suc-
ceeded Mr. *Burleigh,* began a negotiation, the *Spring* before,
with the chairman of the board, to supplant him in the school;
and that this was well known and communicated to the
board.

That said *Fuller,* to excite in said *Burleigh* unjust prejudices
against the board, and a belief of unfair treatment, represented
to him, that it was stated in the board, that the school under
his care was in a strange condition, without order and without
regulation; intending to be understood, that the board was
thereby induced to remove him.

That said *Fuller,* in the meetings of the board, and upon pub-
lic occasions, indulged towards the members thereof intemper-
ate and disrespectful language, derogatory to them as private
gentlemen, and designed to hold them up to public view as be-
ing governed, in their official capacity, by a spirit of subser-
viency, and by the meanest and most pitiful motives.

That it was usual in the school, on days of public exhibition,
to award to those scholars, who distinguished themselves by
public declamation, certain small premiums as tokens of merit,

*Windham*,
July,
1827.

Fuller
*v.*
Plainfield
Academic
School.

the selection being made by the trustees; and on the 31st of *August*, 1825, said *Fuller*, to cast disrespect on the board, objected to the distribution of the premiums, averring, that he would as soon refer the matter to a set of *Turks*; that the preceding year, the premiums were awarded without regard to merit, but with reference to the person with whom the scholars boarded; that he despised such sycophancy in the members; and that the board was awed and governed, by one or two great men.

That at a private party, at the dwelling-house of *Levi Robinson*, a member of the board, said *Fuller* pronounced the members of the board to be a set of rascals and scoundrels, (excepting Mr. *Robinson*, when called upon by him) and no more fit to act in that capacity than *Port Hall*, an infamous black man too well known to all then present.

That said *Fuller*, to discredit the board, and to impute to the members improper motives, charged them with holding secret meetings, and transacting business, without giving the notice required by the by-laws, to all the members of the board; charging them, particularly, with holding a secret meeting, in the month of *May*, 1825, to take into consideration certain by-laws, when in fact said *Fuller* had personal notice of such meeting, and was, by a member thereof, specially requested to attend it.

That in the *Winter* of 1823, to induce the present principal of the school to take charge of it, the board pledged themselves to use every effort to erect a new edifice for the use of the school; and on the 19th of *January*, said *Fuller* was appointed a committee with others to devise a suitable plan for the building, and the measures to be adopted to carry the design into effect; and said *Fuller* entirely neglected to perform his trust, and to concur with the committee and board to redeem their pledge; but, on the contrary, he used every exertion to frustrate the plan by them adopted.

That at a meeting of the board, held at *Elkanah C. Eaton's*, on the 8th of *October*, 1825, the trustees suggested the following charges against said *Fuller*, which, upon his request, were put in writing.

1. In that he has misrepresented the doings of the board, for the purpose of creating discord, and exciting prejudices against the board.

2. In using indecorous and improper expressions respecting

the board, in charging the members with being governed in their official acts, by a spirit of sycophancy.

3. In charging the board with holding secret meetings, especially in the month of *May* last, denying that he was notified, when in fact he was notified, of the same.

4. In totally neglecting his duty, when he has been appointed upon committees.

The return finally stated, That at a subsequent meeting of the board, said *Fuller* not being present, the consideration of said charges was postponed; and said *Fuller* being notified, that they would be taken up, at a meeting, to be held at *Elkanah C. Eaton's*, on the 14th of *February*, 1826, he appeared, and read to the board a certain written document, and at the same time, in a very indecorous and disrespectful manner, said, that he defied the board to proceed to an examination of his conduct as a trustee; denying that they had a right to enquire into it; declaring that he held not his place from them, and was not accountable to the board for his behaviour in it; and repeating, in a very insulting form, *"proceed, if you please"—"proceed, if you please"—"I never shrink in wetting:"* For which, and the aforesaid causes, the board did remove him, the said *Siah Fuller*.

The plaintiff, in his replication, excepted to the return, in several particulars, and prayed for a peremptory *mandamus*. He also averred, that the defendants had not, in their return, set forth the whole of their charter of incorporation, by which they claimed to have the power of removing him; and then proceeded to recite the charter at length. The following extracts contain all the provisions or clauses, bearing upon any question in this case: "Upon the memorial of General *John Douglass, Ebenezer Pemberton, William Dixon, Elisha Perkins, Joseph Eaton, Samuel Fox* and other proprietors of the new school in *Plainfield*, shewing to this Assembly, that they have, at great expense, erected three valuable buildings in *Plainfield*, for the use of said school, and for the promotion of learning in said *Plainfield*, in its various branches; praying that they may be established and made a body corporate and politic:"

"*Resolved* by this Assembly, that *John Douglass, Ebenezer Pemberton, Andrew Backus, Elisha Perkins, William Robinson, Samuel Fox, Joshua Dunlap, Ebenezer Eaton* and *Hezekiah Spalding*, all of *Plainfield*, and such other persons as the proprietors of said school shall elect, not exceeding thirteen in the

*Windham,*
*July,*
*1827.*

*Fuller*
*v.*
Plainfield
Academic
School.

*Windham,*
*July,*
*1827.*

*Fuller*
*v.*
*Plainfield*
*Academic*
*School.*

whole, be, and they are hereby appointed, constituted and declared to be, a body corporate and politic, by the name of *The Trustees of the Academic School in Plainfield;* and by that name, they and their successors in said corporation shall forever be persons known and capable in law to acquire and receive, by all lawful ways and means, and to hold, occupy and possess, all kinds of estate, both real and personal, and to dispose of the same, by deed or other proper conveyance, for the use of said school; provided the rents and profits of such estate shall not exceed 500*l.* lawful money *per annum*, in the whole, at any time. And said corporation shall, by the name aforesaid, be capable in law of suing and being sued, and to plead or be impleaded, in any court of law or equity, as a body corporate, to all intents and purposes; and shall, from time to time, oversee, conduct, manage and direct the affairs and interests of said school, and make and establish all necessary orders, laws and regulations for the government thereof, and to alter the same at discretion; provided, that no such laws and regulations shall be inconsistent with the laws of this state, nor with the rights of *Yale-College.* And said corporation may and shall, from time to time, by their major vote, appoint a clerk, treasurer, and other officers and instructors, proper for conducting the affairs of said corporation, and for the government of said school. And in case of the death or removal of any member or members of said corporation, the surviving or remaining members may elect others to supply the vacancies; provided always, that seven of said corporation shall be resident freeholders in *Plainfield.*"—"Any seven of said corporation shall be a *quorum*, with full power to transact any business proper to said corporation, the whole being notified."—"And all officers and persons, appointed or employed in any office, or trust, by or under said corporation, shall be accountable to their constituents for their doings in such office; and may be suspended or displaced, at discretion."

The superior court in *Windham* county, *January* term, 1827, (present *Daggett*, J.) reserved the case, for the advice of this Court, as to the sufficiency of the writ of *mandamus*, and of the return of the defendants.

*Goddard* and *Frost*, for the plaintiff, contended, 1. That the superior court had authority to issue and proceed with a writ of *mandamus* in this case. The general power is given by

statute ; (p. 314.) and the proceedings are to be according to the course of the common law.    According to Sir *William Black-stone*, a *mandamus* lies to compel the admission or restoration of the party to any office, *or franchise*, of a *public nature.* 3 *Bla. Comm.* 110.    It may be awarded to persons in a public or private employment or station. 1 *Woodes.* 118.    Again, it is said : " He who apprehends he has a right to *a franchise in a corporation*, may apply for a *mandamus* directed to the proper officer, to admit him." 1 *Woodes.* 492.   In *Rex* v. *Parker* & al. 3 *Burr.* 1267.    Lord *Mansfield* stated the law on this subject in more general terms.    " A *mandamus*," he said, ' 'ought to be used upon all occasions, where the law has established no specific remedy, and where in justice and good government there ought to be one."    In *Marbury* v. *Madison*, 1 *Cranch* 168. Ch. J. *Marshall* quotes with approbation the opinion of Lord *Mansfield*, in *Rex* v. *Barker* & al.    In addition to the authorities referred to, see *Rex* v. *Blooer*, 2 *Burr.* 1043.    *The King* v. *Fowey*, 2 *Barn* & *Cres.* 684.   *James Bagg's* case, 11 *Rep.* 98.

2. That the *Academic School of Plainfield* is such a corporation, and the place of a trustee thereof such an office, franchise or station, as will authorize the court to interfere, and restore the plaintiff to it.    This is a corporation, established, by the supreme power of the state, for public and beneficial purposes.   Almost all eleemosynary corporations, those which are created for the promotion of religion, of charity, or of education, are of the same character.    *Dartmouth College* v. *Woodward*, 4 *Wheat. Rep.* 518, 645.    Each individual of the corporation has a franchise.   Per *Washington*, J. 4 *Wheat. Rep.* 657.   This franchise is an incorporeal hereditament.   The subjects of the grant are not only privileges and immunities, but property, or, which is the same thing, a capacity to acquire and to hold property. 4 *Wheat. Rep.* 658.    All immunities and franchises are deemed *valuable* in law ; and the owners have a legal estate and property in them ; and legal remedies to support and recover them, in case of any injury or obstruction of them.    Per *Story*, J. 4 *Wheat. Rep.* 699.

3. That the allegations in the complaint are sufficient to entitle the plaintiff to the relief he seeks.    The complaint states explicitly, though succinctly, the existence of the corporation ; that the plaintiff was a trustee, duly elected, and in the exercise of the rights and privileges of that office ; that the trustees held a meeting, and removed him ; and that the charter

*Windham,*
July,
1827.

Fuller
*v.*
Plainfield
Academic
School.

*Windham,*
July,
1827.

Fuller
*v.*
Plainfield
Academic
School.

limits the number of trustees to thirteen, with a profert of the charter and records.

In the first place, this is not a declaration : it is merely a motion for a rule to shew cause. The allegations are, at least, sufficient for this purpose. Against such an application technical objections will not prevail. In this stage of the proceedings, no special pleadings are necessary or usual. The merits of the cause are not investigated until the return comes in. *Rex* v. *Dean and Chapter of Dublin*, 1 *Stra.* 539. *Com. Dig. tit.* Mandamus. A.

In the next place, if there are defects in the complaint, they should have been taken advantage of, before the return, on a motion to quash the proceedings. After the return, it is too late. *Rex* v. Mayor &c. of *York*, 5 *Term Rep.* 66. 74.

4. That the return of the defendants is insufficient.

First, it does not shew, that the plaintiff was summoned or heard as to the matters alleged against him, previous to his amotion. *James Bagg's* case, 11 *Rep.* 99. *a.* *The King* v. Dr. *Gaskin*, 8 *Term Rep.* 209. There was a violation of one of the first principles of justice—*audi alteram partem.*

Secondly, it does not shew, that any witnesses were examined, by the trustees; or that they received any evidence; or that the charges were, in any way, proved. *The King* v. *The Company of Fishermen of Faversham*, 8 *Term Rep.* 352. 356.

Thirdly, it does not shew, that the meeting of the board, at which the plaintiff was removed, was especially convened to hear and decide the charges preferred against him; or that all the members of the board had notice to attend for that particular business. 8 *Term Rep.* 356.

Fourthly, it does not shew, that the plaintiff was removed, by a vote of the major part of the trustees.

Fifthly, the grounds of amotion are not stated with legal certainty, which is the same in a return to a *mandamus*, as in other pleadings. *Com. Dig. tit.* Mandamus. D 5. *Brosius* v. *Reuter* & al. 1 *Har. & Johns.* 551. The return speaks of the *designs* and *endeavours* of the plaintiff, of his *misrepresentations* and *indecorous expressions*, but contains no specific allegation of *acts* done by him.

Lastly, the charges, if properly made in point of form, are insufficient in substance. [Here the counsel went into a minute examination of the several charges in the return.]

*Windham,*
July,
1827.

Fuller
*v.*
Plainfield
Academic
School.

*H. Strong* and *Judson,* for the defendants, contended, 1. That the proceedings under the writ of *mandamus,* being, by our statute, regulated by the course of the common law ; and this being an eleemosynary corporation, of private endowment; this Court has not power to review the decision complained of.

First, this is an eleemosynary corporation ; and the return of the defendants shews it to be of private endowment.     1 *Bla. Com.* 471.   *Philips* v. *Bury,* 1 *Ld. Ray.* 8.   S. C.   2 *Term Rep.* 352.   *Dartmouth College* v. *Woodward,* 4 *Wheat. Rep.* 518.

Secondly, in such corporations, the right of visitation, or the reviewing of the acts of the corporate body, is vested, 1. in the visitor appointed by the founder ; and where no other visitor is named, and the trustees or governors dispense and manage the charity, not being themselves the recipients of it, they are the visitors.   *Philips* v. *Bury,* 2 *Term Rep.* 353.     The case of *Sutton's Hospital,* 10 *Rep.* 31.   *Dartmouth College* v. *Woodward,* 4 *Wheat. Rep.* 669. & seq. Judge *Story's* opinion.     Or, 2. in default of the appointment of a visitor, then the founder, or his heirs, are visitors.   Or, 3. in default of such appointment, and for want of such heirs, the power of visitation is to be exercised by the court of chancery.   *The King* v. The Master and Fellows of *St. Catherine's Hall,* 4 *Term Rep.* 233.

Thirdly the writ of *mandamus,* therefore, does not lie to restore a fellow in such a corporation.   *The Queen* v. Sir *Richard Raines,* 3 *Salk.* 233.     *Rex* v. Bishop of *Chester,* 2 *Wils.* 206. *Parkinson's* case. 1 *Show.* 72.   3 *Mod.* 265. S. C. *Carth.* 92.

2.  That if this Court has the power to review the decision of the trustees, the plaintiff has not stated a case, in his writ, which will authorize them to grant the relief prayed for.   The writ is insufficient, on several grounds.

First, it does not shew, that at the time of this application, nor even at the time of the alleged amotion, any corporation existed.

Secondly, it does not shew, that by the charter, there was any such officer as trustee; or that, if such office existed, that any rights, duties or privileges appertained to it.

Thirdly, it does not allege the tenure or duration of the office of trustee.   *Non constat* but that the plaintiff's term of office had expired.   It is like a declaration in ejectment, without an averment that the term is unexpired. *Chitt. Plead.* 396, 7. n.

Fourthly, this writ is not directed to the corporation, by

*Windham,*
July,
1827.

*Fuller
v.
Plainfield
Academic
School.*

its name, but to the individuals said to be the members of it. *Rex* v. Mayor &c. of *Rippon* 2 *Salk.* 433.

The plaintiff claims, that all objections to the writ come too late, after the return, and relies upon *Rex* v. Mayor &c. of *York*, 5 *Term Rep.* 66. 74. But see, contra, *Rex* v. City of *Chester*, 5 *Mod.* 10. *Rex* v. Overseers of *Skepton Mallett*, 5 *Mod.* 421. *Rex* v. Mayor of *Abingdon*, 1 *Ld. Ray.* 559. *Rex* v. *Ward*, 2 *Stra.* 893. *Rex* v. *College of Physicians*, 5 *Burr.* 2740. *Rex* v. *Margate Pier Company*, 3 *Barn. & Ald.* 221. *Rex* v. The Justices of the *West Riding of Yorkshire*, 7 *Term Rep.* 48.

3. That the return of the defendants, shews, that the plaintiff was rightfully removed. The trustees had the power of amotion ; and they have exercised it, in a proper manner, and for a sufficient cause.

First, they had the power of amotion. This is implied by the charter. The word " removal" there used, does not refer to the act of the trustee in changing the place of his residence. *That* cannot vacate his office : the board must act to create a vacancy. *Rex* v. *Heaven*, 7 *Term Rep.* 772. But, aside from the charter, the power of amotion is necessarily incident : it is but the exercise of the power of self-preservation. Lord *Bruce's* case, 2 *Stra.* 819. *Rex* v. *Richardson*, 1 *Burr.* 517. 538. *Rex* v. Mayor &c. of *Lyme Regis, Doug.* 149.

Secondly, the objections urged by the plaintiff against the exercise of this power, are unsubstantial.

As to want of notice to the plaintiff, the return shews, that he had notice ; as he was present when the charges were preferred. If there was any defect or irregularity in the notice, it was waived, by his appearance. *Rex* v. Mayor &c. of *Wilton*, 2 *Salk.* 428. *Rex* v. Mayor &c. of *Axbridge, Cowp.* 523.

Another objection is, that it does not appear, that all the members of the board were warned to attend the meeting. But it is stated to have been at *a meeting of the board*, which will be presumed to be a legal one. If any special warning were required, it could be only to guard against a removal, by a bare majority of a *quorum*. The plaintiff's complaint shews his removal to have been by a majority of the whole board.

Another objection is, that it does not appear, that testimony was adduced to prove the charges. This need not appear on the return. Besides, the plaintiff, by his own act, waived the

introduction of any testimony. He did not deny the charges; but placed his defence on the want of jurisdiction in the board.

*Windham,*
July,
1827.

*Fuller*
*v.*
Plainfield
Academic
School.

The plaintiff finally objects, that it does not appear, that he was removed by a majority of the trustees. It is a decisive answer, that his own writ shews this.

Thirdly, the trustees removed the plaintiff for sufficient cause. His conduct was against the duty of his office, and amounted to a breach of the tacit condition annexed to it. 1 *Burr.* 538.

DAGGETT, J. The question is, ought the plaintiff, on the facts appearing on the writ and return, to have the relief sought.

Several objections were taken in argument to the sufficiency of the writ, which it is proper should be considered.

1. It is said, that the plaintiff does not shew, that at the time of this application, or even at the time of the amotion complained of, any corporation existed.

To this objection it is sufficient to reply, that it is alleged, that in *October*, 1825, there was, and for more than thirty years antecedent thereto had been, such a corporation, established by the legislature of the State. As one of the attributes of a corporation aggregate, is immortality, it is a sufficient averment of its continuance.

2. It is objected, that by the act of incorporation counted upon, in the plaintiff's writ, it does not appear, that there was any such office as that of trustee; or that to such office, if such existed, any rights, duties or privileges appertained.

The writ avers, that the corporation or body politic was established by the name of the " *Trustees of the Academic School,*" &c.;—that the plaintiff was one of the trustees, duly elected, and in the exercise of the office and enjoying the rights and privileges belonging to him as trustee;—that nine of the trustees, being a majority, were present at a meeting on the 14th of *February*, 1826, and removed and expelled the plaintiff from his office of trustee. These allegations are sufficient, on a trial on the writ and return.

3. It does not allege the tenure or duration of the office. This objection has been already answered.

4. The writ is directed to the individuals composing the corporation, and not to the corporation by name. *Rex* v. The Mayor &c. of *Rippon,* 2 *Salk.* 433. is the only authority cited in support of this objection; but it by no means establishes it.

*Windham,*
July,
1827.

Fuller
*v.*
Plainfield
Academic
School.

These objections are thus briefly considered, because there is one answer to them all, which is quite sufficient; *they come too late.* There is no authority from cases of *mandamus* or others, which can uphold, in this stage of the proceedings, such merely technical objections. In *Rex* v. Mayor of *York,* 5 *Term Rep.* 66. 74. Lord *Kenyon* and Mr. Justice *Buller* concurred in declaring, that such objections could never prevail, if taken after the return to the *mandamus :*—they should have been urged " *in limine,*" on a motion to quash. This is a very reasonable rule, and accords with the analogies of the law.

But on the merits of this cause, other questions of importance arise. In deciding them, it becomes material to look into the power and privileges of this corporation, and to the rights of the members composing it.

By the charter counted upon in the writ, and recited in *hisce verbis,* in the plaintiff's replication, it appears, that in *May,* 1784, Gen. *John Douglass* and others, who had established a school at *Plainfield,* and erected buildings for its accommodation, applied to the general assembly for an act of incorporation. A charter was granted; and the petitioners, who may be fitly called the *founders of the school,* together with such other as they should elect, not exceeding thirteen, and their successors, were made a body politic, capable of holding property of a certain annual value; of suing and being sued; of managing the affairs of the school; of exercising other powers usually conferred on corporations : and also of filling all vacancies made in their number, by the death or removal of any member or members. It gives also to the trustees the power of displacing or superseding, at their discretion, all persons appointed by or under the corporation.

The first objection taken to the interference of the superior court, is, that this being an eleemosynary corporation of private endowment, it belongs to those who hold the visitorial power to controul these trustees, and not to this Court. That this is an eleemosynary institution for the purpose of dispensing charity, in the education of children is true. 1 *Black. Comm.* 471. *Philips* v. *Bury,* 2 *Term Rep.* 352. *Dartmouth College* v *Woodward,* 4 *Wheat. Rep.* 518. That the founders of it, might have appointed visitors to controul it, is not denied; but they did not, unless these trustees are visitors. On the contrary, they solicited of the general assembly the establishment of a corporation, with powers to manage all its concerns. The general

assembly granted their request; and the trustees appointed under that act, were part, at least, if not the whole, of the original founders. This corporation, then, is the creature of the law; and possesses such owers as the legislature conferred on it, with incidental powers to execute those given. The original founders are merged in the corporation; and henceforth it is to be subject only to the general law of the land. Neither the original founders, nor the general assembly can rightfully exercise any authority over it, by exerting a controul over these trustees, or appointing visitors for that purpose. 1 *Burr.* 199. 4 *Wheat. Rep* 674, 5. *per* Judge *Story.* President *Clap's* History of *Yale-College,* 70. 75.

*Windham,* July, 1827.

*Fuller v. Plainfield Academic School.*

If this doctrine be correct, then this corporation is uncontroulable, except by the laws of the land, to be administered by competent tribunals. Can then, these trustees visit themselves; be visitors and visited? I think not, on the ground of authority. *The King* v. Bishop of *Ely,* 2 *Term Rep.* 338, 9. *The King* v. Bishop of *Chester,* 2 *Stra.* 797. It appears to me also, that there is an intrinsic difficulty in supposing the visitorial power vested in the body of trustees to be exercised over and toward each other.

It is however said, that by the clause in the charter, vesting the trustees with power to fill vacancies occasioned by death or removal, they have the power of *amotion,* without enquiry or conviction, for malversation, but at their discretion. It is certainly difficult to maintain this proposition. The *removal* there mentioned, is a change of residence so as to render it inconvenient for the trustees to act; and besides, it is provided by the charter, that seven of the trustees shall be resident freeholders of *Plainfield.* Moreover, the trustees are vested with power to displace, at pleasure, any officer appointed by them; but no power is given them of removing each other; and such a power would be as unfit as it would be novel.

It is further urged, by the defendants, that if the charter does not, in terms, authorize a removal, yet this power is implied— it is incidental for self-preservation. In support of this idea Lord *Bruce's* case, 2 *Stra.* 819. *Rex* v. *Richardson,* 1 *Burr.* 517. 538. and *Rex* v. *Lyme Regis, Doug.* 149. are cited. It is, indeed, laid down in these cases, that such is the modern doctrine; but what were those corporations? The whole body of a city or borough; and the officers, whom it is said that the corporation might remove, were chosen or appointed by the

*Windham,*
July,
1827.

*Fuller*
*v.*
Plainfield
Academic
School.

corporation. But in relation to the trustees, in whom is vested the visitorial power of an eleemosynary corporation, *Story,* J. in the case of *Dartmouth College,* says, (*page* 675, 6.) there can be no amotion of them, though they are subject to the general law of the land. Be this, however, as it may, can such a removal be made, without sufficient specific charges, and passing upon them judicially ? I am satisfied, that this question must be answered in the negative.

Here several points made in argument need not be discussed, *viz.* that the plaintiff had no notice of these charges ; that no testimony was produced ; that a majority of the board was not present, when the act of removal was passed. These may all be laid out of the case ; because the grounds of removal set up in the return are insufficient to warrant an expulsion.

They are all capable of being reduced to two, *viz.* disrespectful and contemptuous language towards his associates ; and neglect of duty as trustee.

First, as to the language, if uttered, as stated, it was indeed highly indecorous, and deserving of the censure of all honourable men ; but this Court cannot justify an expulsion from office on such charges. What these trustees might have done to one of their number, who had committed a crime, which would banish him from society, it is not necessary to decide. Secondly, neglect of duty as a trustee. The only instance of such neglect specified, is, in not performing his duty as one of a committee of the board in relation to one of its concerns. It cannot be seriously insisted, that such an omission should subject him to amotion.

It is further urged, that there are no emoluments attached to this office ; and of course, that the plaintiff ought not to have the aid of the Court to restore him to it.

In *Rex* v. *Barker* & al. 3 *Burr.* 1266. Lord *Mansfield* said, "that *mandamus* is the proper remedy, where a person is dispossessed of a right to execute an office, perform a service or exercise a franchise, more especially if it be in a matter of public concern, or attended with profit." This is a case clearly within that rule. The plaintiff could not sustain an action at law, because he has sustained no pecuniary loss ; but it is not hence to be inferred, that he is not entitled to a *mandamus.* It is taking quite too narrow grounds, to say, that a person improperly removed from such a franchise, is remediless. It results then,

*Windham,*
*July,*
*1827.*

*Fuller*
*v.*
*Plainfield*
*Academic*
*School.*

1. That if the objections to the writ of *mandamus* are of any force, they come too late.

2. That these trustees having been incorporated, at the request of the original founders, have the powers, and only those, delegated to them in the charter, expressly or by fair implication ;—that the trustees are the only visitors of this academic school ; and that they are subject to the general law of the land, to be administered by the superior court.

3. That the trustees cannot be visitors and visited.

4. That if the trustees have the power of amotion, as incidental and inherent, they cannot exercise it, except for just cause.

5. That no just cause is shewn, by the return. And

6. That a *mandamus* is the proper redress.

The superior court is, therefore, advised to issue a peremptory *mandamus* to restore the plaintiff to his office of trustee, from which he has been illegally removed.

The other Judges were of the same opinion.

Peremptory *mandamus* to be issued.