### TRUSTEES UNION BAPTIST ASSOCIATION v. F. M. HUNN ET AL.

#### No. 437.

1. **Foundations of Colleges.**—The law makes two species of eleemosynary foundations, the one, foundatio incipiens, or the corporation, in which sense the State is the general founder of all colleges, and the other, foundatio perficiens, or the donation of it, in which sense the first gift of the revenues is the foundation, and the giver is the founder.

2. **Power of the Founder.**—One who conveys property in trust for charitable purposes has, unless he assigns it to another, visitatorial power, in the exercise of which

he may prescribe rules for its management and the administration of the trust, govern and control the trustees, inspect their proceedings, and correct abuses.

3. **Trustees of a Corporation.**—The incorporation of trustees under a charter which confers upon them the full power of management, divests the right of the founder, and vests it, as well as the absolute title to the property conveyed, in the corporation.

4. **Title to the Baylor University Grounds.**—See facts upon which it is held that the Union Baptist Association had no such interest, legal or equitable, in the Baylor University grounds at Independence as would enable it to recover them from one to whom they had been sold, by the trustees of Baylor University, after the abandonment of the school, for the purpose of realizing funds to pay the debts of the corporation; although at one time the Texas Baptist Educational Society had the power to fill vacancies in the board of trustees of the university corporation, and this power had afterwards been transferred to the Baptist State Convention, of which the Union Association had at that time become a part.

5. **Execution Sale—Insufficient Description of Realty.**—A sale under an execution, the levy upon which describes the property as "the Baylor University, in the town of Independence, Washington County, Texas, together with all its lands, buildings, improvements," etc., vested no title in the purchaser, because no such description of the property is given as is essential to a valid sale of lands under execution.

6. **Baylor University at Independence.**—History of the Baylor University—final sale of its property.

APPEAL from Washington. Tried below before Hon. LAFAYETTE KIRK.

*Robertson & Davis*, and *Dallas, Saunders & Green*, for appellant.—The trustees of Baylor University had been divested of all equitable title in the property in controversy before the deed to Clay was ordered to be made, and before it had been executed or delivered.

*Searcy & Garrett*, for appellees.—There was never any legal consolidation of Baylor University with Waco University, consequently the resignations tendered by the board of trustees of Baylor University, to take effect when the trustees of the consolidated university had been appointed, never took effect. The acts of de facto officers are binding upon the corporation. Sayles' Civ. Stats., art. 575, sec. 9; Wait on Insolv. Corp., sec. 423; 2 Mora. on Corp., sec. 940; Clearwater v. Meredith, 1 Wall. (U. S.), 40; Angel on Corp., 159, 160; Charitable Association v. Baldwin, 1 Metc., 365; Cox v. Railway, 68 Texas, 230.

WILLIAMS, ASSOCIATE JUSTICE.—Appellant brought this suit, in trespass to try title, to recover of the defendants property on which the Baylor University at Independence was formerly conducted. The defendants claimed under a conveyance made to T. C. Clay by parties claiming to be president and secretary of the corporation which had owned the property. Plaintiff in reply, among other things, denied

the power of such parties to convey, charged that the sale was fraudulent, and asked that, in case it should be found that the parties named had the power to sell, it be set aside.

The appellant, plaintiff below, was organized in 1890, as a corporation for missionary, educational, and benevolent purposes, with corporate powers vested in three trustees, by whom this suit is prosecuted.

In the early days of the Republic, an association of the Baptist churches of the southern part of Texas, called the Union Baptist Association, was formed, and has ever since existed.

In 1845, a corporation named "The President and Trustees of Baylor University," was created and organized, under an Act of Congress of the Republic, for the purpose of establishing an institution of learning at such place as should be selected by the trustees.

In this body the title to the land in controversy was, through deeds from various individuals, vested in fee simple, without any reservation or the declaration of any trust; and by it the Baylor University was established upon such land at Independence, and was there conducted until 1886.

Whether the lands were donated or were bought, and from what sources were derived the funds to establish the university, are questions to which no answer is furnished by the record.

If the Union Association founded or endowed the institution, or originally had any interest, legal or equitable, in the property acquired by it, there is no evidence in the record to show it. There is no reference to that society, either in the charter or in the deeds. The charter did empower a body called the Texas Baptist Educational Society, through its committee, to fill vacancies in the board of trustees constituting the university corporation; and by an amendment of the charter by the Legislature in 1850, this power was transferred to the Baptist State Convention. At that time the Union Association, or the churches composing it, had become a part of the Baptist State Convention by uniting with other organizations of that denomination; though it seems also to have kept up its old organization.

But the charter of the university corporation conferred upon it capacity to own and hold real estate and other property, and to convey same. It also gave to the board of trustees the full management and government of the university and all of its affairs and property; and no right or interest in the property or control over the affairs of the corporation or the school was recognized to exist in any other person or body.

It can not therefore be admitted that the Union Association is shown to have been, as seems to be contended, the founder of the university in any legal sense.

"In eleemosynary foundations, such as colleges and hospitals, where there is an endowment of lands, the law distinguishes and makes two

species of foundations; the one foundatio incipiens, or the incorporation, in which sense the king (or the State) is the general founder of all colleges and hospitals; and the other foundatio perficiens, or the donation of it, in which sense the first gift of the revenues is the foundation, and he who gives them is in law the founder; and it is in this last sense we generally call a man a founder of a college or hospital." 1 Blacks. Com., 480; Opinion of Judge Story in Dartmouth College v. Woodward, 4 Wheat. (4 Cond. Rep.), 565.

But should the view most favorable to appellant be taken, and should it be conceded that the appellant occupied towards this university the attitude of the individual founder of a charitable institution, no conclusion would result from that fact alone which would entitle it to maintain this action to recover the property.

An individual who conveys property in trust for charitable purposes has, unless he should assign it to another, what is called the visitatorial power, in the exercise of which he may prescribe rules for its management and for the administration of the trust, and may govern and control the trustees, inspect their proceedings, and correct abuses in their conduct. But this is a power which may be assigned; and the incorporation of trustees, under a charter which confers upon them, as does that in question, the full power of management of the property and of the institution, divests such right of the founder and vests it, as well as the absolute title to the property conveyed, in the corporation. Angell & Ames on Corp., 726, 738; Dartmouth College v. Woodward, 4 Wheat., 518; Opinion Ch. J. Marshall; 2 Perry on Trusts, 744; 2 Kent, 302, 303, and notes; Fuller v. Plainfield School, 6 Conn., 544; Sanderson v. White, 18 Pick., 338, 339.

Hence it is evident that in the origin of this corporation and the acquisition of the property there was nothing which gave to the Union Association any interest, legal or equitable, in the property, or any control over the trustees or the government of the college and the property held for its use. Its power over these subjects consisted alone in the influence it might exercise in the choice of trustees through its creature, the Educational Society, and later, through its voice in the counsels of the Baptist State Convention, of which it was a constituent.

It remains therefore to determine whether or not, by any of the subsequent transactions relied on, appellant acquired any interest in the property which will support this action and enable it to recover.

It appears, that in 1868 a judgment was rendered against the university corporation, on which an execution was issued and levied upon "the Baylor University, in the town of Independence, Washington County, Texas, together with all its lands, buildings, improvements, libraries, and apparatus, endowments, franchises, charter rights, and privileges." A sale was made under this levy, at which C. R. Breed-

love became the purchaser on the 27th day of April, 1869. Breedlove conveyed the property, described as in the levy, to the university corporation, for a recited consideration of $250, the amount paid by him at the sheriff's sale, "in trust for the Baptist denomination in Texas, and free from the claims and debts of all persons whomsoever, and for educational purposes."

It is evident that this conveyance of itself vested no title in the plaintiff in this suit, even if Breedlove had a title to convey. If Breedlove had any estate in the lands, it passed to the corporation.

It is clear, however, that under the execution sale Breedlove acquired no title to the land. No such description of the property is given as is essential to a valid sale of lands under execution. It follows, that the title remained in the corporation, as it was before the attempted sale.

It is claimed, that through subsequent transactions between the several Baptist organizations and the president and board of trustees of Baylor University, the title of this property, either legal or equitable, was acquired by the Union Association, and in the examination of this contention a history of those transactions is necessary.

As has been before stated, about 1850 an organization of the Baptist churches in Texas was formed, called the Texas Baptist State Convention, and in this the churches belonging to the Union Association participated, and of it became a part. As has also been stated, in this convention the power of filling vacancies in the board of trustees of the university corporation was vested, by amendment of the charter. The school was continued by the corporation, evidently as a denominational school, under the moral control of the Baptist State Convention, until 1885. Up to that time there had existed another Baptist organization, "the Baptist General Association," not included in the State Convention, and by it another school was maintained at Waco; and there were negotiations and discussions among the members of the two organizations in contemplation of a consolidation of them into one, representing the whole of the denomination in the State; and also of a consolidation of the two schools.

In 1885 an agreement was reached, and the two bodies were merged into one, called the Baptist General Convention. There also took place negotiations and transactions concerning the two schools, which, as far as they are shown by the record, it is necessary to state in detail, in order that their legal effect may be seen.

In October, 1885, the Baptist State Convention adopted the report of its committee on the removal of Baylor University and Baylor Female College (another corporation), "that the time has come when these institutions of learning should be moved to some more eligible place," and recommending that this be done; that a committee of fifteen be appointed to take charge of this whole matter of removal and

location, and all questions that may arise pertaining thereto, including consolidation, etc., in conjunction with the board of trustees of the two schools; and that they take at once such steps as may be necessary to the earliest practicable accomplishment of this important work; that the schools remain at Independence that year, but that a place for a new location should be selected; and that the present property be tendered to the Union Association for educational purposes, and maintained at Independence.

On October 22, 1885, the president and board of trustees of Baylor University adopted a resolution, as follows: "Whereas there has been much agitation within the bounds of this convention on the subject of the removal of the Baylor University from Independence; therefore, resolved, that this matter be referred to the Baptist State Convention for its action in the matter." On the same day (as stated in the record) the same body adopted a resolution which recited that the State Convention had decided to change the location of the schools from Independence, and had appointed the committee, as shown above; and that the board acquiesced in the action of the convention and would carry out its will in good faith, and would heartily co-operate with such committee and with the trustees of the female college in the proposed change and relocation; also appointing a committee to act with a like committee of the female college to procure the necessary change in the charter for the removal of the institution.

The committee of the two schools and that of the State Convention met, but no further action was taken by them.

On May 16, 1886, the president and board of trustees of Baylor University adopted a resolution, "that our resignation as trustees of Baylor University be tendered now, to take effect when the Baptist General Convention have appointed a new board for the consolidated university."

At the first meeting of the Baptist General Convention, June 29 to July 2, 1886, the president of the board of trustees of Baylor University reported to the convention concerning the management and success of the school for the session of 1885–86, and stating, "we have appointed brethren to meet those that may be authorized, to make all necessary arrangements to correct and legalize the transfer of the property offered to the Union Association;" also stating the existence of unpaid debts against the university for money borrowed and expended in repairing the buildings.

At the same session the General Convention selected trustees for the Baylor University to be organized at Waco, and instructed them to secure a charter for that institution.

On the 6th day of August, 1888, a charter was filed by J. E. Parker, John L. Dyer, and W. H. Jenkins, three of the chosen trustees, reciting the selection of the trustees by the convention, and that therefore

they "do hereby create a corporation to be called Baylor University, at Waco." The purposes of the corporation are declared to be, "for the encouragement, support, maintenance, and promotion of education in all its branches;" its domicile was fixed at Waco; its corporate existence limited to fifty years; its government committed to thirteen trustees, the first incumbents being those previously selected by the convention; its powers were specified, and were such as appertain to educational corporations; it was declared to be under the patronage of the Baptist denomination of Texas, as represented by the Baptist General Convention, which convention was given the power to retire trustees and fill their places, as well as other vacancies.

No mention is made in this charter of the corporation of the president and board of trustees of Baylor University, nor of the old university. Those exercising the powers of that corporation do not appear to have had any connection whatever with the incorporation of the school at Waco, beyond what may be inferred from the acts already stated.

Since this act of incorporation, the Baptist General Convention has annually filled the vacancies in the board of trustees of the Baylor University at Waco.

At a meeting held in June, 1886, the Union Association accepted the tender of the property belonging to the two school corporations at Independence, made by the State Convention; a plan for the conducting of schools there, under the name of Crane College, was formulated; a committee was appointed to prepare a charter for that institution, though it does not appear that this was ever done. Schools were opened at the old sites of the Baylor University and Baylor Female College, in the fall of 1886, and were carried on until 1888, when, on account of small attendance, separate schools could not be maintained, and they were consolidated and afterwards taught in the property belonging to the female college. The land belonging to the university was rented out and held by the tenant, who rented from the trustees of Crane College, appointed by the Union Association at the time of the purchase of Clay and Huhn, hereinafter mentioned.

Some repairs were made on the houses while the school was carried on in the university buildings, out of means donated by private individuals, and it appears that nothing was ever expended on it by the Union Association, as such.

In May, 1890, a meeting of the old board of trustees of Baylor University, who had tendered their resignation, as above stated, was called by its secretary, for the purpose of closing up the school. A quorum met and discussed plans for paying the indebtedness of the university (about which there is no dispute), and, being unable to settle such debts otherwise, and receiving a proposal from Clay that he would buy the land in controversy belonging to the corporation, release it from

a claim of his own, and pay the only other outstanding debt, the board accepted the offer, and instructed the president and secretary to execute the deed, which was done. Clay paid the other debt, making the consideration between $2500 and $3000. There is evidence on the part of the plaintiff that the property conveyed was worth $30,000 to $40,000 for school purposes; and on the part of the defendant, that the price it brought was its fair value, after the school went down. The sale was made by the trustees under the belief that their resignation had never taken effect, there having been no consolidation of the two corporations as contemplated by them when the resolution was adopted.

Subsequently, the Baptist General Convention instructed its board of trustees and the board of trustees of Baylor University, at Waco, to execute to appellant, after its incorporation, quitclaim deeds to the property, which was accordingly done.

It is plain, that if appellant has any title it does not come through the acts of either the Texas Baptist Convention or the Baptist General Convention; for neither of those bodies was ever invested with any title to the property, or any lawful power over it. As before pointed out, the power vested in the former to fill vacancies in the board of trustees of the corporation had no such operation, and conceding that when it was merged in the latter its power in this respect vested in the General Convention, this does not help the plaintiff's case. Nor could any agreement between either of these bodies and the Union Association affect the title. The tender, therefore, of the property to the Union Association and its acceptance, and the deed from the General Convention, can not have the effect to confer title on the plaintiff, admitting that it, as a corporation, would succeed to all the rights which the unincorporated association ever possessed.

It does not seem to be contended that there was a consolidation of the old Baylor University with the Waco school. It is evident there was none. In the first place, power to effect such a consolidation was wanting in the old corporation, without authority from the State. No such capacity is given in the charter.

There was no surrender of its charter. There was never, so far as the record shows, an agreement or meeting between the managers of this corporation, and that at Waco, with which it is presumed the consolidation spoken of in some of the proceedings was contemplated. It may be conceded that all parties consented that a consolidation of some sort might be made in the future, but the things essential to consummate it were never done. Indeed, it is stated by uncontradicted evidence that the committees appointed to arrange such details did nothing.

The result was, that a new corporation was created at Waco, and to the schools conducted by it the patronage and support of the Baptist

General Convention was transferred; and that the old Baylor University corporation continued in existence, invested with its charter powers and with the title to its property, unless by its own act it had divested itself of the latter.

It is to be observed, that in its pleadings appellant has undertaken to set out specially its title, and the grounds on which it seeks to recover. No conveyance by or agreement with the old university corporation is alleged; nor is there any claim that by its acts its title to the property has been passed to plaintiff. On the contrary, it is assumed that the right to control and convey the property was in the State organization of the Baptists, and the right asserted is under them, and through a supposed consolidation. This might be sufficient to dispose of the claim asserted in this appeal, that through the several resolutions of the university corporation plaintiff acquired the equitable title.

But the facts in the record do not show that there was ever a conveyance, or an agreement to convey, made by the trustees.

They first passed a resolution to refer to the State Convention for its action a certain matter. What was it that was thus referred? It was, in the language of the resolution, "the subject of the removal of the Baylor University from Independence," and not the disposition of the property.

The second resolution acquiesces in the decision of the convention to change the location of the schools, and agrees to co-operate in the change and relocation; and appoints a committee to secure the necessary change in the charter. The third resolution tenders resignations, to take effect on the selection of trustees for a consolidated university. Nowhere in these resolutions is there an agreement to convey to the Union Association the title to the property held by this corporation. It is true that the report of the president states that his board had appointed a committee to co-operate in correcting and legalizing the transfer of the property tendered to the Union Association; but this evidently refers to the action stated above, and can not be held to be an agreement to make title, both because of the lack of the essentials of an agreement and of want of power in the president. The true explanation of it all is, that in the removal it was contemplated that there would be a consolidation of corporations, under which the title to all property held by the constituents would pass to the new body, which would also become charged with the debts. The committees appointed failed to take the requisite action, and this was never effected. The old corporation continued liable for its debts, and was bound to satisfy them out of its property. The school was established by the Union Association on the property of this corporation, with its consent, and it may be that the association could not have been ejected arbitrarily to its damage; but that is not made an issue by the pleadings, nor, if it were,

is there evidence to support it. When the sale was made, the property sold was no longer used for the purposes of a school, and therefore no injury was thereby done to plaintiff, as it did not own and had no interest in the property.

Upon the whole case, it is held that plaintiff showed no cause of action, and on its pleadings and evidence could not have recovered the property, nor secured any relief asked for. If it had such right of action, many of the assignments of error would be sound. It is unnecessary for us to determine whether or not, by the sales under which defendants claim, the title passed out of the corporation, and whether or not there were grounds alleged and supported by evidence, which would, if urged by a proper party, justify the setting aside of the sale, or the granting of other relief against the trustees.

Plaintiff having no legal interest, the judgment must be affirmed.

*Affirmed.*

Delivered May 3, 1894.

GARRETT, Chief Justice, did not sit in this case.

Writ of error refused July 10, 1894.