## THOMAS S. HARDEE v. WM. H. GIBBS, Auditor, etc.

1. PLEADING AND PRACTICE — MANDAMUS. — The petition for the writ of *mandamus* is an *ex parte* application to the court, and constitutes no part of the pleadings. It should present a *prima facie* right on the part of the relator and of duty and obligation to perform the act demanded on the part of the defendant. It should be verified by affidavit, otherwise the alternate writ should not be granted. It should also appear that a demand had been made, and a refusal or neglect to comply.

2. SAME — RULE AT COMMON LAW. — At common law a writ of error would not lie to the judgment of an inferior court awarding or refusing an alternate *mandamus*, or in awarding or refusing a peremptory *mandamus*.

But the practice is otherwise in this country, and the awarding or refusing the writ is not a matter of mere discretion.

3. SAME — RIGHT OF REVIVOR AGAINST OFFICER. — A suit by or against an officer may be revived by or against the successor. Such is regarded as a proceeding against the officer, and not against an individual. The responsibility results from the office and not from any individual responsibility of the person occupying it. Such a rule is essential to the administration of justice.

4. APPROVAL OF LAWS — POWER OF THE GOVERNOR— ACT OF APRIL 25, 1873. — In the approval of laws the governor is a component part of the legislature, and unless the constitution allows further time, he must exercise his power of approval before the two houses adjourn, or it will be void. Our constitution makes no such provision; therefore the approval of the act of April 25, 1873, by the governor, after the adjournment of the legislature, is a nullity, and the act is void.

ERROR to the Circuit Court of 1st District of Hinds County. Hon. GEORGE F. BROWN, Judge.

The pleadings sufficiently appear in the opinion of the court.

*C. E. Hooker*, for plaintiff in error, insisted :

That the act of April 21st, 1873, which abolished the office of state engineer, was void and of no effect, because it was approved by the executive after the adjournment of the legislature. And that it can not be helped out by either of the silent modes of approval; that is, by retaining it in his possession for five days during the session, or failing to return it within the three first days of the next session. Cushing on the Law and Pr. of Leg. Bodies, sections 2374 and 2375; Cooley on Const. Lim., p. 153; Fowler v. Peirce, 2 Cal., 165; People v. Purdy, 2 Hill., 31.

*G. E. Harris*, Attorney General for the state, contended :

1. That this petition was filed against Musgrove, auditor, etc., and as there is no statute allowing a revivor against his successor in office, the petition should be dismissed. Secretary v. McGarrahan, 9 Wall., 313; United States v. Boutwell, 17 Wall., 604.

2. That the governor has the right, under the constitution, to approve a bill at any time within five days after the adjournment of the legislature. People v. Bowen, 30 Barber, 26; Stinson v.

Smith, County Treasurer, etc., 8 Minn., 369 ; Cooley on Const. Lim., 152, 155.

3. That whether the bill was approved or not after the adjournment of the legislature, it became a law on account of the failure of the executive to return it to the legislature within the three first days of the next session. Art. 4, sec. 24, Const. Miss.

PEYTON, C. J., delivered the opinion of the court :

On the 2d of December, 1873, Thomas S. Hardee filed his peti‾tion in the circuit court of Hinds county, for the first district of said county for the writ of *mandamus* against Henry Musgrove, as auditor of public accounts, commanding him to issue a warrant for $200 dollars on the state treasurer, in favor of the said Thomas S. Hardee, or show cause why he does not issue it.   The petition stated that as engineer of the state, he was legally entitled to the sum of two hundred dollars for one month's salary, from the 15th day of March to the 15th day of April, 1873, and that a warrant on the treasurer for that sum had been demanded of said auditor who refused to issue the same.

On this petition a summons was issued against the said Musgrove, which seems to have been regarded in the court below as in the nature of an alternative *mandamus*, to which said auditor appeared, and for return thereto said, that said office of state engineer was abolished by an act of the legislature on the 21st day of April, 1873, and that therefore the relator had no right to the warrant demanded.   Whereupon the relator moved the court for a peremptory *mandamus,* which was refused by the court.   And hence the case comes to this court by writ of error.

Since the decision of this cause in the court below, the term of office of said Henry Musgrove as auditor of public accounts having expired, a writ of *scire facias* has been served on W. H. Gibbs, his successor in office to revive the cause against him.

The proceedings are somewhat informal.   The petition for the writ of *mandamus,* which is an *ex parte* application to the court,

and constitutes no part of the pleadings, should present to the court a *prima facie* case of right on the part of the relator to the right claimed, and of duty on the part of the defendant to perform the act demanded, and an obligation to perform it, and should be verified by affidavit, otherwise the alternative writ will not be granted. It should also appear from the petition, that a demand had been made on the defendant to do the thing he is sought to be compelled to do, and that he refused or neglected to do it; and the facts and circumstances under which the relator claims relief should be stated fully, clearly and unreservedly, and not inferentially; and it should also be shown that the defendant has it in his power to perform. When a *prima facie* case is thus made in the petition, instead of an ordinary summons, an alternative writ of *mandamus* is awarded by the court, which is in the nature of a declaration, and is the first pleading in the cause, commanding the respondent forthwith to do the act required, or to show cause why it should not be done. At common law, a writ of error would not lie to the judgment of an inferior court, awarding or refusing an alternative *mandamus* upon an application for it, or in awarding or refusing a peremptory *mandamus* upon the return to the alternative writ. But in this country the practice is otherwise. The granting or refusing of it is not a matter of mere discretion in the court, and whenever a suitor is entitled to a right which is withheld from him by the decision of the court, it can scarcely be said to be a matter of discretion which is understood to be the action of the court on such matters as are not demandable of right, but are accorded to the parties to advance the justice of the case. Etheridge v. Hall, 7 Porter, 47; and *Ex parte* Morris, 11 Grattan, 292; High on Extraordinary Legal Remedies, 365, sec. 512.

After the granting of the writ, three courses are open to the respondent: First, he may do the thing required; second, he may demur; and third, he may make return. If he chooses to demur, and the demurrer is sustained, the application is, of course, at an

end. If, however, his demurrer is overruled, the respondent must then make return, denying the allegations of the writ, or setting up new matter constituting a defense to the relator's claim. This is the usual practice in this country, and is believed to be the most simple and correct. Moses on Mandamus, 204; and High on Extraordinary Legal Remedies, 361.

With respect to the right of the plaintiff in error to revive this suit by *scire facias* against W. H. Gibbs, as successor in office of Henry Musgrove, we entertain no doubt. This question was settled by this court in the case of E. N. Duff et al. v. D. C. Beauchamp, at the last term. In that case, it was said the auditor of public accounts, treasurer and secretary of state, exert a portion of the public authority in discharging official duties imposed by law, and any suit commenced by or against either of them, may be revived by or against his successor in office. And in support of this view of the law, the case of Bushnell v. Gates, 22 Wis., 202, is cited, in which a suit instituted against a public officer was revived and continued against his successor in office, for the reason that it was to be regarded as a proceeding against the officer and not against an individual. The responsibility results from the office, and not from any individual responsibility of the person who happens to occupy it. Such a rule is essential to the administration of justice, in view of the changes that are so frequently occuring in office.

In the case of Lindsey v. The Auditor, 3 Bush., 235, the auditor had resigned his office, and his successor was qualified. This presented, say the court, no defense in bar or abatement, the induction of the new officer should have been suggested, and the suit have been prosecuted against him. To the same effect are the cases of Maddox v. Graham and Knox, 2 Metcalf, Ky., 71, and Clarke v. McKenzie, 7 Bush., 523. In all such cases, whether as plaintiff or defendant, the officer represents the public interest, and is sought to be compelled to perform an official duty imposed by law upon the incumbent.

We come now to the consideration of the question involving the validity of the act of the legislature of the 21st of April, 1873. It is conceded by both parties, that the legislature adjourned *sine die* on the 19th day of April, 1873, and that the governor of the state signed the bill two days after the termination of that session of the legislature. Has the governor the constitutional right to do so? By reference to the 24th section of article 4 of the constitution, it will be seen that an act passed by both houses may become a law only in three ways during the session of the legislature : 1. By the signature of the governor. 2. By the passage of the act by a vote of two-thirds of both houses over the veto of the governor. 3. By the failure of the governor to return the bill within five days, during the session (Sundays excepted), after it has been presented to him. The act under consideration did not take effect in either of these modes during the session of the legislature.

After the legislature has adjourned, there is only one mode by which an act passed by both houses of the legislature may become a law by force of the constitution, and that is where the governor receives the bill within five days next preceding the adjournment of the legislature, and does not return it with his signature or with his veto during the session, it shall be a law, unless sent back within three days after the next meeting of the legislature. And if it has become a law, it must be by virtue of the governor's signature to the bill two days after the adjournment of the legislature. The participation of the governor in the legislation of the state is similar to that of the president of the United States in the legislation of congress. With reference to the part taken by the latter in the legislation of the congress of the United States, Professor Pomeroy, an able expounder of constitutional law, says: " Although the constitution, in its general language, vests the legislative power in a congress which is declared to consist of a senate and house of representatives, yet a reference to other portions of the organic law shows that this congress does not, in fact,

possess the sole legislative function. No law can be passed without the consent of the executive, unless two-thirds of both houses shall finally concur therein. The assent of the president is as necessary to the enactment of any measure, of the nature of law, as that of a majority of both branches of congress. *In this the president legislates.* His affirmative or negative decision is a step in the process of creating and not of executing laws. By virtue of the various provisions of the constitution, the congress is, in fact, though not formally and in terms, composed of three distinct bodies, president, senate, and house of representatives, and all must concur, with the single exception just noticed, that a two-thirds vote of both the other branches avails against the dissent of the executive. But the legislative function of the president is in every way inferior to that held by the senate and by the house of representatives. This inferiority consists, first, in the fact that his negative vote may be overruled by two-thirds of the congress, or in other words, that a majority of two-thirds practically dispenses with his concurrence; and secondly, in the fact that the president cannot originate any legislative measure." Pomeroy's Constitutional Law, 111, secs. 174 and 175.

Our constitution, like that of the United States in this respect, requires that every bill which has passed both houses shall be presented to the governor of the state. If he approves he shall sign it, but if he does not approve, he shall return it, with his objections, to the house in which it originated, who shall enter the objections at large upon their journal, and proceed to reconsider it, and if it be approved by two-thirds of both houses, it shall become a law. Hence it will clearly appear that the *active* participation of the governor in legislation is manifested by his signing the bill.

And as it is insisted on the part of the defendant in error, that the act in question became a law by virtue of the governor's signature, the other modes by which an act may become a law by the negative or nonaction of the governor, are not involved in

the consideration of this case; our inquiry, therefore, will be limited to the investigation of the question, whether the act became a law by virtue of the signature of the governor thereto, after the termination of the session by a final adjournment of the legislature?

Judge Cooley, in his invaluable work on Constitutional Limitations, 152, says: "It has been held that, in the approval of laws, the governor is a component part of the legislature, and unless the constitution allows further time for the purpose, he must exercise his power of approval before the two houses adjourn, or his act will be void." He further says: "The power of the governor, as a branch of the legislative department, is almost exclusively confined to the approval of bills." Cooley on Con. Lim., 155.

If, as is laid down by Pomeroy in analogy to the president, and by Cooley, the governor, in appoving bills, is a component part of the legislature, his signing a bill is a legistive act, which Cooley says, must be performed before the two houses adjourn or it will be void. The governor, as a branch of the legislature, can do no legislative act after the adjournment of the legislature. He has no more power to legislate in vacation than either house of the legislature. If, as Pomeroy says, the president legislates in signing an act of congress, the same may be said with equal propriety of the act of the governor in signing an act of the legislature. It would be equally a legislative act and can be performed only during the session of the legislature. The governor can do no legislative act nor perform any legislative function after the final adjournment of the legislature. Hence we conclude that the act of the governor, in signing the act in question, is an act *ultra vires*, and is therefore void.

The court below erred in refusing the peremptory mandamus asked for on the part of the plaintiff in error.

The judgment is reversed and the cause remanded.