CASE 73—PETITION FOR MANDAMUS—FEBRUARY 10.

3bu231
119  507

## Lindsey vs. Auditor of Kentucky.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. The Secretary of State certified to the State Auditor, without itemizing the account, the entire cost of two hundred and thirty-five copies of the Adjutant General's Report, 1861–6, which were furnished the State, and received by the Secretary as directed by act of March 2, 1867. As said act does not require the Secretary to itemize the account, the Secretary's certificate, until shown to be otherwise, must be presumed to be right and legal, and as presenting, *prima facie*, a cause of action against the Auditor for refusing to issue his warrant· upon the Treasurer. The circuit court erred in dismissing the petition on demurrer.

2. An action for mandamus against the State Auditor for refusing to issue his warrant upon the Treasurer is substantially a controversy between the plaintiff and the State. The fact that the Auditor has gone out of office and his successor has qualified presents no defense

Lindsey vs. Auditor of Kentucky.

either in bar or abatement. The change in the incumbent should be suggested on the records by proper orders, and the action should progress against the successor, and will equally bind him, whether he was the incumbent at the commencement of the proceedings or subsequently appointed.

3. Under the act of March 2, 1867, directing the Secretary of State to receive two hundred and thirty-five additional copies of the Adjutant General's Report, &c., the Adjutant General is entitled to the same compensation that the Public Printer and Binder would have been entitled to for such additional copies, and ten per cent. additional for extra expenses.

G. W. CRADDOCK and
T. N. LINDSEY,                                  For Appellant,
                        CITED—
*Act of March 7, 1867, Sess. Acts, pp.* 80, 81.
*Revised Statutes,* 2 *Stant.,* 224; *Ib.,* 1 *Stant.,* 240.
*Constitution of Kentucky, sec.* 25, *art.* 4.
*Civil Code, secs.* 526, 527.
8 *Mon.,* 440 ; *Divine vs. Harris.*
2 *Mct.,* 56 ; *Maddox, &c., vs. Grayham & Knox.*
18 *B. Mon.,* 852 ; *Anderson Co. Ct. vs. Stone & Son.*
2 *Met.,* 206 ; *Garrard vs. Nuttall.*
14 *Ark. R.,* 688 ; *Danley, Auditor, &c., vs. Whitely.*
1 *Duvall,* 172 ; *Hobson, &c., vs. Commonwealth.*
*Moses on Mandamus, head "Parties," &c., p.* 18.

JOHN RODMAN, Attorney General, and
A. J. JAMES,                                   For Appellee,
                        CITED—
*Session Acts,* 1867, *page* 80 (*March* 7).
*Sec.* 3, *art.* 8, *Constitution of Kentucky.*
*Sec.* 25, *art.* 3, *Ib.,* and *art.* 1, *sec.* 9, *Ib.*
*Revised Statutes,* 1 *Stanton, page* 193 ; 2 *Ib.,* 225.
*Act of February* 25, 1865, *Session Acts, p.* 57.
1 *Bush,* 72 ; *Vinsant vs. Auditor.*
12 *Peters,* 524 ; *Kendall vs. United States.*

Lindsey vs. Auditor of Kentucky.

14 *Peters*, 497 ; *Decatur vs. Paulding.*

6 *Howard*, 92 ; *Brashcar vs. Mason.*

11 *Howard*, 272 ; *Reside vs. Walker.*

1 *Smith's (N. Y.) R.*, 267 ; *Brown vs. Colie.*

3 *Selden*, 478 ; *Allen vs. Patterson.*

1 *Chitty's Pleading, pp.* 270, 271.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

This was a suit in the Franklin circuit court, it being the fiscal court of the State, by appellant against appellee as Auditor, to compel him by mandamus to issue his warrant on the State Treasurer for twenty-one thousand two hundred and thirty-five dollars and twenty-six cents. This claim is founded upon the certificate of the then Secretary of State, John S. VanWinkle, dated August 29, 1867, certifying that he had received two hundred and thirty-five copies, well bound, of the Adjutant General's Report, and that. said Lindsey was entitled therefor the said sum of twenty-one thousand two hundred and thirty-five dollars and twenty-six cents, under an act, entitled "An act authorizing the purchase of additional copies of the Adjutant General's Report," approved March 2, 1867, for the two hundred and thirty-five copies authorized by it to be purchased from said Lindsey.

The petition sets up said act, and that the two hundred and thirty-five copies of the book had been delivered by Lindsey and received by the Secretary, and that he had, as directed in said act, certified to the State Auditor the price and amount due said Lindsey, yet the Auditor had refused to issue his warrant therefor on the State Treasurer. It also avers that two hundred and thirty-five copies of the first volume of said book had been delivered soon after said enactment, and that the Secretary had received the same and certified the costs to said

Auditor, but he refused to issue the warrant on the Treasurer therefor; that, on August 28, 1867, he delivered two hundred and thirty-five copies of the second volume of said report, being the entire and complete work, to the Secretary of State, who received the same and certified the entire costs thereof to the Auditor as aforesaid; and that it was the amount which said books would cost if printed by the Public Printer and bound by the Public Binder, with ten per cent. added thereto, and that the plaintiff is justly entitled thereto.

To this petition the Auditor made response, substantially denying that said Lindsey was entitled, under said act, to said sum of twenty-one thousand two hundred and thirty-five dollars and twenty-six cents; and that the same had been certified by the Secretary of State through a misapprehension of the law or the facts, or both; and then set out several particulars in which he supposed the Secretary had erred and transcended his authority under the law, especially in allowing for the composition thereof.

Evidence was taken by both sides on these issues; but afterwards Samuels resigned as Auditor, and D. H. Smith was appointed and qualified as his successor; and, by leave of court, Samuels put in an amended answer, setting up these facts, to which plaintiff demurred, which the court carried back to the petition, and sustained it, as to the petition, with leave to plaintiff to amend; he, having declined to do this, and electing to stand on the demurrer, the court dismissed the petition, and he has brought up this judgment for revision.

The petition does set out, *prima facie*, a cause of action. Though the plaintiff's account was not itemized by the Secretary in his certificate, and, although this would have been more business-like, and more in accordance

with the general laws regulating the duties pertaining to the Auditor's department, yet the certificate must be regarded as *prima facie* correct, especially as the act of March 2, 1867, does not direct the Secretary to itemize the account. The certificate, therefore, must be presumed to be right and legal until shown to be otherwise; hence, a good cause of action was shown by the petition, and the court erroneously sustained the demurrer as to it.

As the suit was against Samuels the Auditor, and not Samuels the individual, it was substantially a controversy between Lindsey and the State of Kentucky. The amended answer, therefore, setting out his resignation as Auditor, and the appointment and qualification of his successor in office, presented no defense, either in bar or abatement, but should have been treated as a mere suggestion of record of the facts therein stated, and, by proper orders, the suit should have progressed against Smith as Auditor, and the demurrer to it sustained. As decided by this court in *City of Louisville vs. Kean et al.,* 18 *B. Monroe,* 13, *and Maddox .et al. vs. Grayham & Knox,* 2 *Metcalfe,* 71, which were suits to compel the respective city councils of Louisville and Maysville to perform their legal duties in levying a tax to pay the bondholders of their respective cities, some of whom had gone out of office and new members had been elected and qualified after the commencement of the suit, and before final judgment, " a change in the membership of the board does not change the parties so as to abate the proceedings. The constituent parts of the board may not be the same, but the representative body remains identical.' So with the office of State Auditor: the individual holding the office at any given period may resign, or die, or remove from the State, but the office continues, and his successor's duty is to guard the interest of the State in

all legal proceeding commenced by or against him.  In all matters relating to the finances of the State, they pertain to the office, and not the incumbent, and will equally bind the officer, whether he was the incumbent at the commencement of the proceedings or subsequently appointed.  Nor do we understand that the circuit judge's opinion was based upon any supposed different rule; but the demurrer, as stated in the opinion, was carried back and sustained to the petition because the Secretary's certificate showed no itemizing of Lindsey's account against the State.

A's the case must be reversed and sent back for trial, and as it is averred in the petition that this sum was due under said act authorizing the purchase of two hundred and thirty-five additional copies of said report, we have examined the evidence with care, and we find not even a scintilla of proof that Lindsey or any one else practiced any fraud in the procuring of said enactment, nor indeed that it was passed at his or his friends' instance, nor that they made any representations as to even the probable cost of the work; nor is there anything in the record to excite even a suspicion that Lindsey or any one else has acted fraudulent in attempting to obtain any more than they believe strictly due them according to the law; whilst, on the other hand, it is equally apparent that the Auditor was only in the conscientious discharge of what he deemed his duty by law, to protect the State Treasury from unjust or illegal claims, whether the same be allowed through design or mere oversight, or a misconstruction of the law; and as this appears to be a conscientious difference of opinion on a strictly legal question, it is proper that we should settle the rights of the parties in the confident belief that both will cheerfully submit and act upon it without further litigation.

The first section of said enactment directs the Secretary of State "to purchase of D. W. Lindsey two hundred and thirty-five copies of the Adjutant General's Report for 1861–6, known as the History of Kentucky Soldiers during the late war, *at what the same would cost the State if printed by the Public Printer and bound by the Public Binder, with ten per cent. added thereto to cover money advanced by said Lindsey for extra clerk hire.*"

Whether this was a provident or improvident law, is not for the consideration of this court, nor whether these books could have been bought at a much less price than it would have cost the State to have ordered them from the Public Printer. The Legislature saw proper to enact that they should be bought at the price which it would have cost the State to have them printed by the Public Printer; and this being strictly within the constitutional power of the Legislature to provide by law what compensation should be allowed, and how this should be ascertained, we have only to expound the law, and ascertain the respective rights of the parties under it.

The compensation to said Lindsey is fixed by said enactment "*at what the same would cost the State if printed by the Public Printer,*" &c. The composition—that is, the type-setting—is the main item in all public printing—indeed, exceeds all the other items. The proof is conclusive that the first volume of this report had been printed near three months previous to the date of this law, and that the full capacity of the office was only adequate to the furnishing of type for twenty-five pages, so that when twenty-five pages were printed, the type had to be distributed and used in the composition of the next twenty-five pages. It is therefore most apparent, that when the last twenty-five of several hundred pages of this first volume went to press, there remained only the composi-

tion of this last form, and of course this was soon distributed in order to use the type for other composition; or, if left standing, it was the private property of the Public Printer, as the State had no interest in the type.

It then follows with unerring certainty, that, had two hundred and thirty-five additional copies of this work been ordered from the *Public Printer*, he would have had to reset the type for the composition, and would have been entitled to pay accordingly for the first volume; and, under the provisions of said act, Lindsey is entitled *to what it would cost the State if printed by the Public Printer;* and the legal criterion of compensation for the first volume, under the provisions of said act, is the same as if no previous number of said volume had been ordered. But no part of the composition for the second volume had then been set up, and, as the Public Printer must needs set it up to furnish the State the six hundred copies previously ordered, and as the State must pay him for this composition, he could not have charged the State for composition again, had the two hundred and thirty-five copies been ordered from him; but, as said by Mr. Barrett, in his explicit and intelligent deposition, the State would justly have been chargeable only with the press-work, paper, ink, and such other necessary work as the multiplication of these copies would have involved. It is clear, therefore, that, as to this increased number of two hundred and thirty-five copies of the second volume, the State could neither be charged with composition, nor as transfer work; for it was not of the latter class, but for the paper, press, and other necessary work and materials in this multiplication of the copies.

By an act approved February 25, 1865, to remain in force two years, the compensation of the Public Printer

was increased thirty-three and one third per cent. on the then legal rates. This law had expired five days before the date of the act authorizing this purchase; but, by an act approved March 8, 1867, five days thereafter, the first section of the act of February 25, 1865, was "*continued in force to the 25th day of February,* 1868." (*Session Acts,* 1867, *vol.* 1, *p.* 81.)

It is insisted, with much plausibility and force, that this revived the act of February 25, 1865, and continued it in force from the day it expired, or, in other words, it related back so as to continue said act in force without an interregnum, and we are inclined to accept this as the proper construction; but still, if not, it does not change the result, for, by the act of March 2, 1867, the Public Printer, had 'the books been ordered from him, would have had a reasonable time to complete the work, and his compensation would be due under the laws in force at this time, and not when ordered, and five days would not have been a reasonable time to complete such a work; and especially should this be the case as the Auditor insisted he should not pay for the first volume until the work was entirely completed and received by the Secretary of State; and such was the opinion of the then Attorney General of the State, J. M. Harlan, Esq., as shown by his written opinion to the Auditor, now in the record; and we are inclined to receive this also as the true construction of this enactment of March 2, 1867; and the more so, as both the Auditor and law officer of the State so construed and acted upon it, and Lindsey had to, or did, abide their decision. If this be correct, as the books were not delivered to the Secretary of State, nor received by him, until August 28, 1867, near six months after the said enactment of March 8, 1867, renders it certain that Lindsey's compensation must be fixed by

the statute of February 25, 1865, as continued in force by the said act of March 8, 1867, with the ten per cent. added thereto, as provided, for clerk's hire, &c., in the act of March 2, 1867.

It is also insisted by appellant that the Auditor should be compelled to issue his warrant for the twenty-one thousand two hundred and thirty-five dollars and twenty-six cents, whether that amount be legally due Lindsey or not; that even if the Secretary of State made a mistake, either of fact or law, and allowed too much against the State, yet, as the Auditor had no right, under this special statute, to audit and settle the account, but the Legislature had selected the Secretary of State to do this, that the Auditor was then only to perform a ministerial act, and had no legal right to review the action of the Secretary of State; and if money should be paid to Lindsey not legally due him, the State must resort to her action to recover it back.

Whilst the Auditor insists that he can only draw a warrant when an appropriation by law has been made, and that only such an amount had been appropriated to pay for said book as was legally due to Lindsey; and that for all sums not so legally due, though certified by the Secretary of State, there was no appropriation, and that he, as Auditor, must ascertain whether such appropriation has been made; and in the discharge of this duty, he must necessarily determine the amount due under the law, and withhold any warrant when the amount has not been so appropriated.

But we will not now express an opinion as to this legal question, as the case was not tried upon its merits, and, as we suppose that both parties are acting in the utmost good faith, and that both will comply with the law as now ascertained, and that further litigation will cease,

as doubtless the appellant and present Secretary of State can ascertain the amount legally due from the State for said books, and can state the account by items; and that the present Auditor will cheerfully and promptly issue his warrant for the amount so ascertained, thus leaving only the costs unadjusted, which can only be of minor significance to the parties.

Wherefore, the judgment is reversed, with directions for further proceedings, &c.