# THE TOWN OF WESTBROOK'S APPEAL FROM RAILROAD COMMISSIONERS.

Hartford Dist., Oct. T., 1888. CARPENTER, LOOMIS, BEARDSLEY, TORRANCE and FENN, Js.

57 95
58 461

57 95
59 404

57 95
63 103

57 95
66 225

57 95
69 606

57 95
72 284

57 95
76 69

Gen. Statutes, § 3489, provides that the selectmen of any town, the mayor and common council of any city, the warden and burgesses of any borough, and the directors of any railroad company, may bring their written petition to the railroad commissioners alleging that public safety requires an alteration in any crossing of a railroad and highway, and that the commissioners, after notice and a hearing, may determine what alterations shall be made, by whom, and at whose expense. A later section allows an appeal from any order of the commissioners. Held—

1. That the officials named, in bringing a petition under this statute, act only as agents of the corporations which they represent, and not as agents of the state or of the law. The corporations and not the officials are the real party.

2. That a railroad that was operated by a railroad company under a perpetual lease, was the road of the latter company within the meaning of the statute, and that that company was the proper one to bring a petition to the railroad commissioners.

3. That the statute could not be so construed as to prohibit the assessment of any portion of the expense of an alteration upon the towns.

4. That it was no objection to the validity of the statute that there was no precedent duty upon a town so assessed. It is sufficient if the statute at the same time creates a duty and provides for its enforcement.

5. That the statute intends that a town should be made a party where a petition is brought by a railroad company. It makes no difference that there is no express provision for giving notice to the town in such a case. The spirit of the act and general principles require notice to be given.

6. That the statute cannot be adjudged void as being against natural justice.

7. That its enactment was an exercise of the police power of the state; and that, as such, the act was not in conflict with any of the provisions of the constitution.

Petitions for the removal of certain grade crossings under the statute were signed—"The directors of the N. Y., N. H. & H. R. R. Co., by Lynde Harrison, their attorney." The commissioners made an order in the matter, from which the respondent town appealed to the Superior Court, alleging that the petitions were brought by the railroad company, which the appellee admitted. In subsequent pleadings the town alleged that the petitions were not signed by the directors or by any person legally authorized to do so. Held—

1. That the allegation that the railroad company brought its petitions, implied that they were brought by its authority and that the proceedings were in due form.

2. That this allegation could not be contradicted by the later pleadings.

3. That the objection was in the nature of a dilatory plea and should have been taken at an earlier stage of the case.

4. That it should, at any rate, have been made a ground of appeal.

It is no objection that the board of directors authorized the proceeding at a meeting held out of the state.

If a suit is brought in the name of a corporation by an executive officer without authority, and the corporation with knowledge fails to object within a reasonable time, it will be bound by the act of the officer.

Any evidence is admissible which tends to prove, either a previous authority or a subsequent ratification.

In the petitions the directors were described collectively and simply as such, and not individually and by name, and the petitions were signed in the same manner, and no objection was taken at an early stage of the case. Held that the court below was justified in finding that the petitions were brought by the authority of the directors.

A town has authority, under § 3490, and also under the general statutes relating to highways, to take land for any alteration of a highway required by the railroad commissioners under § 3489.

[Argued December 19th, 1888—decided January 19th, 1889.]

APPEAL by the town of Westbrook from an order of the railroad commissioners in the matter of certain grade crossings in the appellant town, made under Gen. Statutes, § 3489; taken to the Superior Court in Middlesex county, and heard before *Park, C. J.* There were three petitions brought in behalf of the New York, New Haven & Hartford Railroad Company, which were heard together by the commissioners and a single order passed. A finding of facts was made and an order passed by the court affirming in most respects the order of the commissioners. The town appealed to this court. The case is sufficiently stated in the opinion.

*S. L. Warner* and *W. F. Willcox*, for the appellants.

*L. Harrison* and *S. A. Robinson*, for the appellee.

CARPENTER, J. This is an appeal from the doings of the railroad commissioners in the matter of certain grade cross-

ings in the town of Westbrook. There were three applications brought by the railroad company for the purpose of abolishing the grade crossings. They were heard together, practically as one proceeding, and but one order passed. The appeal was heard by the Superior Court, and a decree passed substantially affirming the order of the railroad commissioners. The town appealed to this court.

There are twelve reasons of appeal. The first eight are based on a claim that the applications were not properly brought. The ninth is that the proceeding should have been brought by the lessors and not the lessees of the railroad. The tenth is general, that judgment should have been rendered for and not against the town, and requires no further notice. The eleventh and twelfth allege that the statute authorizing these proceedings is unconstitutional.

Were the applications authorized, and in due form? We do not see how this question can arise under the pleadings.

In the appeal the appellant alleges "that on the 22d day of June, 1887, and on the 5th day of October, 1887, the New York, New Haven and Hartford Railroad Company, * * * by its directors, brought its petitions of the above dates, to the board of railroad commissioners of this state, asking for a change of the location of certain public highways in said Westbrook, in order to avoid a grade crossing," etc. The answer admits this allegation to be true. We do not see why that does not effectually end that controversy; unless it is competent for a party to deny or contradict in one part of his pleading what he has affirmed in another, and which has been admitted by the adverse party.

Besides, this claim, and every phase of it, is in the nature of a plea in abatement. The order of the commissioners shows that the selectmen of the town were present and were heard at the hearing before them. They certainly might have interposed this objection as a preliminary one. Being a dilatory plea, which defeats the present proceeding without affecting the merits of the cause, reason would

seem to dictate that it should have been interposed *in limine;* thus saving the parties the expense and delay of a nugatory proceeding.

But if this view is too technical, then we think that the appeal should have been taken partly at least on that ground. But the appeal makes no allusion to any want of power in the directors to institute the proceedings, nor to any informality in the process. On the contrary, as we have seen, it alleges affirmatively that the railroad company by its directors brought its petitions, etc. That means that the directors were duly authorized, and that the proceedings were in due form. That allegation being admitted, it, and all the facts which it fairly implies, may be regarded as established for the purposes of this case.

After alleging the bringing of the petitions by the railroad company, the appeal sets out the final action of the commissioners, which was also admitted, and then proceeds as follows: " The petitioner is aggrieved by the orders, adjudications and doings of said board of railroad commissioners in respect to the changes ordered to be made in said highways and the laying out and building of new highways, the method of crossing the track of said railroad by said highways, and the sum of money adjudged to be paid by it to said railroad company, and the other expenses ordered to be incurred by said town." This allegation was denied by the railroad company. Thus the pleadings terminated in an issue involving in general terms the merits of the case. The town then filed another paper, which in form seems to be a motion to dismiss all the proceedings, which paper is as follows:

" The town of Westbrook, appellant, says that said application ought to be dismissed, and ought not to be granted, because they say,—

" 1. That the railroad company owning the railroad described in the petition, has not made any application for the change of said grade crossings, nor have the directors of said railroad company signed any such applications.

" 2. That the said grade crossings in said petition men-

tioned intersect and cross the track of the New Haven & New London Railroad Company, otherwise in said petition called the Shore Line Railroad Company; that said company owning said railroad, have not signed said application, nor have the directors of said company.

" 3. That the said pretended application is not signed by the directors of the New York, New Haven & Hartford Railroad Company.

" 4. That the pretended application was not brought by the directors of the New York, New Haven and Hartford Railroad Company, nor by any person legally qualified so to do.

" 5. That the object and purpose of said proceeding is to charge the town of Westbrook with the payment of $5,000 and upwards, by virtue of certain pretended statutes of this state, which said statutes and proceedings are unconstitutional and void in this, that they seek to charge said town by judgment of this court with the payment of said sum of money without due process of law, and that said proceeding is not either a legal or equitable proceeding under the constitution of this state or the United States, and that it deprives the appellants of a right to trial by jury; for all of which reasons they say that said pretended application should be dismissed, and they be allowed the costs in this matter unjustly suffered."

The railroad company answered the above as follows:—

1. " As to so much of paragraphs one and two as alleges that the grade crossings are upon the railroad of the Shore Line Railroad Company and that the application is not brought by said last named company, the appellees say that said railroad is leased to the New York, New Haven & Hartford Railroad Company, perpetually from 1874, and is operated and controlled only by said last named company and its directors, and is the road of said last named company within the meaning of section 3489 of the General Statutes.

2. " Paragraphs three, four and five are denied."

The appellant in its reply admits the lease, but denies that it authorized the lessee to institute these proceedings.

Thus there are in form two distinct sets of pleading in one cause; which on its face is somewhat irregular. It is evident however that counsel and the court below treated the latter as an amplification of the former, and as included therein. Thus considered the pleadings raise the three questions presented by the reasons of appeal.

The first question, relating to the authority for and the manner of bringing the suit, we have already considered in one aspect of it. We will now notice it in another.

Passing from the technical view and considering the matter on its merits, it will be convenient to divide the question thus: Did the directors legally decide to bring these applications? and were they brought in proper form?

In considering the first question, let us guard against any misconception as to the capacity in which they acted. It is earnestly contended that the statute contemplates their action only as a board, and that they acted solely as the agents of the law; and that they could only act when convened as a board, upon due notice to each member specifying the object of the meeting. This is a mistaken view. The state discharges its governmental duties to the traveling public, in respect to ordinary highways, by requiring towns to make and maintain them in good condition and reasonably safe. When steam came to be used for the transportation of passengers and freight on land, a different kind of highway was required. There are dangers attending that method of traveling, which the law guards against as far as possible. The crossing of these two kinds of roads at the same grade created a new and formidable danger. At first the amount of business was relatively small, and it was not deemed advisable to incur the expense necessary to abolish grade crossings. But now business and population have increased to such an extent that it has become the policy of the law to abolish all grade crossings and thereby abolish the danger.

The state has not yet undertaken to pay any portion of the expense. As the two roads combine to cause the

danger, the state says that those whose duty it is to maintain the roads shall unite in removing it. It has established a tribunal to determine when and in what manner it shall be done, and to apportion the expense. To insure action it has provided that the selectmen of any town, the mayor and common council of any city, or the warden and burgesses of any borough, on the one hand, and the directors of any railroad on the other, may invoke the action of this tribunal. If neither party moves, the commissioners may act to a limited extent of their own motion. Obviously these officials severally represent and act for the corporations of which they are agents. There is no reason for saying that they represent the state and are agents of the law. The corporations and not the agents are the real parties; and the expense is borne by them and not by the officials. It follows that any action by the directors which would bind the company in ordinary matters will be sufficient in this. We think it was competent for the directors to consider this matter in the state or out of it; and when convened for any purpose, whether with or without special notice. Indeed it stands upon the same footing with any other suit. If instituted by any executive officer, and the corporation with knowledge of it fails to object within a reasonable time, we do not see why it will not be bound by it.

This view of the case sufficiently answers the objections to the admission of evidence. Any evidence was competent which tended to prove that the directors authorized the proceeding; or, if not previously authorized, that they subsequently ratified it. It is quite apparent that the directors and the corporation are concluded by the result. If so, what reason for complaint has the town?

The other branch of the inquiry is, whether the applications are brought in due form. Each one purports to be "the petition of the directors of the New York, New Haven & Hartford Railroad Company." Each one is signed "The Directors of the N. Y., N. H. & H. R. R. Co., by Lynde Harrison, their Attorney." This seems to be a literal compliance with the statute. Perhaps it would have

been more lawyer-like to have inserted the names of the directors; or, better still, to have brought it in the name of the corporation. However this may be, we think at this late stage of the case the court was justified in finding that the applications were duly brought by the directors at their request and upon their order.

The substance of the objection we have considered is repeated in a variety of forms in the first eight reasons of appeal. We believe, however, that what we have said is a sufficient answer to them all. We do not deem it necessary to consider each one by itself.

In answer to the ninth reason of appeal, we have no hesitation in saying that the Shore Line railroad, operated as it is by the New York, New Haven & Hartford Railroad Company, under a perpetual lease, is the road of that company within the meaning of the statute, section 3489.

We have not failed to observe that the learned counsel for the town in their brief have suggested and discussed several questions which the pleadings do not raise, which are not shown to have been made in the court below, and which the reasons of appeal do not specifically point out. Therefore we may properly pass them without further notice.

But as they are questions concerning which we entertain no doubt, we will briefly notice the more important ones.

1. That the town has no power under this statute to take land for highway purposes. The answer is that section 3490 gives the power expressly; and it has sufficient power under the general statute relating to highways.

2. That there is no precedent duty, by common law or statute, which this statute is designed to enforce. There need be none. It is enough that this statute makes it the duty of the town to unite with the railroad company in removing a dangerous nuisance.

3. That the statute, § 3489, does not contemplate the town as a party, makes no provision for giving it notice, and that it is not in fact a party.

It is too late to claim that the town is not a party to this proceeding. Section 3483, which relates to the same subject

matter, does require notice to be given to the selectmen when the commissioners take the initiative. It is true that in § 3489 notice to the selectmen or the town is apparently omitted. And so also no notice is required to be given to cities or boroughs. The explanation is obvious enough. It seems to be assumed that one of these municipal corporations will be the petitioner, and as such no notice is required. By inadvertence, probably, where the railroad company is the petitioner, no express provision is made for notice to the corporation having charge of the highways. Yet we cannot doubt that the legislature intended that such corporations should have notice. Such is the fair implication of this section taken by itself; and that implication is materially strengthened when we consider the two sections together. The commissioners did in fact give notice in this case; and it is hardly possible that a case will arise in which notice will not be given.

4. It is said that the legislature cannot adjudge the expense of avoiding or abating danger created by one, on another who is a stranger; that the increasing number and velocity of trains causes the danger, and that the railroad company and not the town is benefited thereby; that the town did not create the crossing or danger and has no pecuniary interest in its continuance; and hence that the statute must be held to impose the duty of paying for these changes only on the railroad company.

We cannot accept the conclusion, because it will be impossible to construe the statute as prohibiting the assessment of any portion of the expense upon the town. Nor are we prepared to grant the premises to the extent claimed. Some of the highways may have been laid out after the construction of the railroad, and so in a sense the town may be said to have created the crossing. The very existence of the railroad did in fact benefit the town; it increased the value of real estate, increased population and business, and the result was an increased grand list. Then again the increase in the number and velocity of the trains is because the public required it; the business interests of the community and

the comfort and convenience of travelers are supposed to be promoted thereby. Of such benefits the inhabitants of the town get their fair proportion. Considerations like these, and many others that might be suggested, induced the legislature to require towns to bear some portion of the expense of abolishing grade crossings. But the statute requires no vindication at our hands. We can only construe and enforce it. If its terms are plain and unambiguous we have little or nothing to do with the reasons for enacting it.

The pleadings object to the statute as unconstitutional. It is to be noticed, however, that counsel for the town do not discuss the power of the legislature to pass such a statute, but the whole argument is directed to the expediency of doing so, and to defects in the act as passed. They contend that it is vague and uncertain; that it gives no rule by which the duty of the town can be ascertained or its liability measured; that the tribunal is bound by no rule of evidence or law, but can decide as caprice or their sense of right may dictate, etc. etc. And from considerations like these the conclusion is reached that it is not a constitutional exercise of legislative power. We will not stop to consider the argument in detail; yet it must not be assumed that we concede the justice of the criticism; all we concede is that this statute, like many others, may be abused. If administered in the spirit of fairness intended by the legislature, substantial justice will be done. We see no indications that it was not so administered in this case. Indeed counsel disclaim any reflection on the triers. The Superior Court on appeal can correct any abuses, if any such shall exist, and this court can correct any errors of law. The reasons suggested therefore, falling short, as they do, of showing that the act is against natural justice, are not sufficient to require of us a judgment that the act is void.

We might stop here; but we will add that the act in question is an exercise of the police power of the state. Its object is to change or remove certain conditions, lawful in themselves, but which have become a source of danger to life and property. The remedy consists in requiring those

charged with the duty of maintaining the highways, to change the conditions and hereafter discharge their duties in such a manner as to avoid the danger. It is doing no more than has been done for a long time. Towns have always been required to keep highways and bridges safe. Railroads have ever been required to use the utmost vigilance in adopting ways and means to secure the safety of travelers. It has never been considered that statutes for such purposes are in conflict with the constitutional right of trial by jury, or that proceedings to enforce them were not due process.

There is no error in this judgment.

In this opinion the other judges concurred.