TILTON E. DOOLITTLE, STATE'S ATTORNEY, *vs.* THE SELECTMEN OF BRANFORD.

New Haven and Fairfield Cos., June T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The statute, (Gen. Statutes, § 3483,) which authorizes the railroad commissioners to make alterations in highways where necessary to the removal of grade-crossings, provides that the commissioners shall determine the expense and by whom it shall be paid, with the right to apportion it between the railroad company and the town. Held that an order, made before the work was done, that a town should on its completion pay a gross sum toward the cost of a bridge over the railroad track to be constructed by the railroad company, was not invalid.

With full means of ascertaining beforehand the entire expense to be incurred in building such a bridge, it is not to be presumed that the commissioners ordered the town to pay a greater sum than one half the entire cost, to which the assessment upon the town was limited by the statute.

While the railroad commissioners cannot interfere with the general power of towns and selectmen to lay out new highways, yet they have, under the statute, power to deal with existing highways where a change becomes necessary to the removal of a grade-crossing, and where the construction of short portions of new highway becomes necessary they may order such new highway made.

The alteration of highways for such a purpose is not a matter of private and adversary nature, but of public concern, and the state's attorney should properly act in enforcing the order of the commissioners.

While the practice in this state with regard to the application for a writ of mandamus to compel the performance of a public duty has not been uniform, it certainly permits the state's attorney to prosecute in his own name alone.

Where proceedings by mandamus against municipal officers have been be-

gun, a change in the membership of the office does not so change the parties as to abate the proceeding.

A demurrer admits facts that are well pleaded in that it does not deny them, yet the admission can be used only for the purposes of the argument on the demurrer. It is not evidence for the party alleging the facts demurred to.

The question whether or not public safety requires any change of a highway at a grade-crossing is one that the legislature has entrusted solely to the railroad commissioners as an original one and to the Superior Court only by an appeal from their doings. On the hearing of an application for a mandamus to compel a town to construct such highway the court has no authority to pass upon that question. The decision of the commissioners not having been appealed from, becomes *res adjudicata.*

Where a town was a party to the proceedings before the commissioners upon an application of a railroad company for the removal of a grade-crossing, and the selectmen were present and heard, and were notified of the decision, and knew it to be on file and record in the office of the railroad commissioners, it was held that they were bound to take notice of the particulars of the decision, although a copy of it was referred to as thus on file and record and was not annexed to the alternative writ.

And the objection to the alternative writ as defective for this cause, held to be one of form only, of which advantage could be taken only by a motion to quash the writ.

In applications brought by a public officer for a mandamus to compel the performance of a public duty, an affidavit is not necessary.

[Argued June 10th—decided September 12th, 1890.]

APPLICATION by the state's attorney for the county of New Haven to the Superior Court in that county, for a writ of mandamus to compel the selectmen of the town of Branford to make certain alterations in certain highways of the town that had been ordered by the railroad commissioners for the purpose of removing grade-crossings. The case was heard, upon the defendants' return to the alternative writ, before *Robinson, J.*, and a peremptory mandamus issued. The defendants appealed. The case is fully stated in the opinion.

*H. Stoddard* and *J. W. Bristol*, for the appellants.

*L. Harrison*, for the appellee.

ANDREWS, C. J.   For fully twenty years the legislature of this state has been devising laws to prevent the destruction of human life at railroad crossings of highways.   Disasters, frequent and sometimes appalling, have been happening at such crossings ever since railroads have been built, and the legislature has been seeking from time to time to frame enactments by which they should be avoided.   These acts appear in the Public Acts of 1870, ch. 125, Acts of 1873, ch. 67 ; Acts of 1876, ch. 36 ; Acts of 1877, ch. 8 ; Acts of 1883, ch. 107 ; and Acts of 1884, ch. 100.   The act of 1884 intended to make provision for the entire removal of all the grade crossings in the state with all convenient rapidity.   It gave full power to the railroad commissioners and virtually said to them—make such alterations of highways at their crossings of railroads at grade as you shall deem best, but have the grade crossings removed.   In 1888 the provisions of all the then existing acts were brought together into one section, which is section 3489 of the General Statutes.   And this has been further reinforced and made emphatic by the act of 1889, ch. 220.

In the light of these reiterated expressions of the legislative will, it is undeniable  that it has become the settled policy of the legislature to abolish grade crossings.   This policy has been recognized and seconded by the courts in numerous cases.   *Town of Suffield* v. *New Haven & Northampton Co.*, 53 Conn., 367 ; *Woodruff* v. *Catlin*, 54 Conn., 277 ; *New York & New England Railroad Co.* v. *City of Waterbury*, 55 Conn., 19 ; *Town of Westbrook's Appeal from R. R. Commissioners*, 57 Conn., 95 ; *Town of Fairfield's Appeal*, id., 167. Of the act of 1884 this court, in *Town of Westbrook's Appeal*, at page 104, said : " Its object is to change or remove certain conditions, lawful in themselves, but which have become a source of danger to life and property.   The remedy consists in requiring those charged with the duty of maintaining highways to change the conditions and hereafter discharge their duties in such a manner as to avoid the danger."   And of the purpose of the acts this court in *New York & New England R. R. Co.* v. *City of Waterbury*, supra, at page 24,

said again:—" In fact such crossings are public nuisances dangerous to human life, and no man has a vested interest in the creation or continuance of such a nuisance. In the exercise of the power of protecting human life the legislature may at any time and without notice abate it or prevent its existence."

The act of 1884 is as follows: " The railroad commissioners may, when in their opinion public safety requires an alteration of any highway crossed at grade by a railroad, after a hearing had upon such notice as they shall deem reasonable to the railroad company owning or operating said railroad, and to the selectmen of the town, mayor of the city, or warden of the borough, within which said highway is situated, and to the owners of the land adjoining said crossing, order such alterations in such highway as they shall deem best, and shall determine and direct by whom such alterations shall be made, at whose expense, and within what time ; provided, that in no case shall more than one half the expense be paid by the town, city or borough aforesaid ; and provided further, that such alterations as are made at the primary instance of the railroad commissioners shall not be ordered at the rate of more than one a year on any one railroad, except in the case of railroads now having a double track throughout their entire length."

Pursuant to this statute the directors of the New York, New Haven & Hartford Railroad Company, on the fifth day of August, 1887, made their petition in writing to the railroad commissioners, alleging that the Shore Line division of their railroad was, in the town of Branford, crossed at grade by three highways, and that public safety required certain changes in such highways, to the end that the grade crossings might be removed. The railroad commissioners after due notice and hearing ordered certain changes in the highways and that they should be carried over the track of the railroad by a bridge ; and further ordered " that said town shall procure the right of way for, lay out and construct the proposed highways, on the south of said railroad, and pay all the expenses thereof, including all land damages, and that

said company shall build said bridge, with the approaches
thereto and abutments of the same, and that on the comple-
tion thereof said town shall pay said company the sum of
fifteen hundred dollars towards the cost of constructing said
abutments, bridge and approaches." This order was duly
made known to the railroad company and to the town and
the selectmen. No appeal was taken therefrom to the Supe-
rior Court by any of the persons entitled to take such an
appeal. It was at any rate acquiesced in by the town, and,
if we may believe the finding of the commissioners, it was
agreed to by the selectmen.

Afterwards, the town and its selectmen having refused
and neglected to do any of the things so required by the
order to be by them done, the state's attorney for New Haven
County made application to the Superior Court in that coun-
ty for a writ of peremptory mandamus, as set forth in the
record. An alternative writ was granted and was duly
served and returned. The parties appeared, and various
proceedings were had thereon in court, such that on the 13th
day of May, 1890, the court ordered that a peremptory writ
of mandamus do forthwith issue, directed to the defendants,
commanding them to procure the right of way for, lay out
and construct, the highways on the south side of the railroad,
in a manner directed in the order of the railroad commis-
sioners. From this order of the Superior Court this appeal
was taken by the defendants.

The appellants in their brief have grouped all their grounds
of error under five heads. It will be convenient to consider
these several heads in a different order from that in which
the appellants have arranged them.

1. The appellants' second ground of error is—" that the
railroad commissioners had no power to pass the specific
order in question." It is objected that the order was void
for the reason that the commissioners ordered the town to
pay the gross sum of fifteen hundred dollars "towards the
cost of the bridge, abutments and approaches." The stat-
ute authorizes the commissioners to determine "at whose
expense" the alterations shall be made, and this court has

twice decided that there might be an apportionment of the expense between the railroad company and the town or that the whole might be assessed on either. It would seem that the order to pay a gross sum is not invalid. It is true that the expenses to be determined by the commissioners must be the "actual" expenses and not conjectural expenses. But if the expense is actual the determination by whom it shall be paid may as well be made before as after the payment. It is true also that it would not be within their power to direct the town to pay a sum greater than one half the whole cost of the bridge, etc. The items that would enter into the cost of the bridge, its abutments and approaches, would be known before any of the work was done with almost the same certainty as after it was finished; the number of yards of earth filling or excavation, the amount of masonry, and the quantity of iron, and the price of each, are all within the knowledge of the commissioners. Having full means of ascertaining the entire actual cost it is not to be presumed that they ordered the town to pay a greater sum than the one half of such entire cost.

It is further objected that " the order relative to the location, building, laying out and obtaining the right of way for the highways in question was beyond the power of the railroad commissioners."

It cannot be claimed that the commissioners have authority under the statute above recited or by any other statute to lay out any new highway as an independent matter. They have no such power. They cannot interfere with the general power of towns and selectmen to lay out all the needed new highways within their own limits. But they do have power to deal with existing highways. They may order a change in the location of any existing highway when such change becomes necessary to the removal of a grade crossing, although the change so ordered of necessity involves the construction of short portions of new highway —such being regarded as alterations of the old and not as the establishment of new ways. *Town of Suffield* v. *New Haven & Northampton Company*, 53 Conn., 367; *Town of*

*Fairfield's Appeal*, 57 Conn., 167. We think the order of the railroad commissioners was valid, and that there is' a clear right in the public to have it enforced.

2. The defendant's fourth ground of error is, that "the proper and necessary parties are not before the court: 1st, because this proceeding is prosecuted in the name of the state's attorney alone, and the railroad company is not the party plaintiff, although the only party in interest; 2d, because the town of Branford is not the party defendant, although the order is directed to the town and not to the selectmen; and 3d, because since the institution of this action one of the original defendants has ceased to be a selectman and another has been elected in his place."

The argument here is that the mandamus commands nothing but the laying out of a new highway, and that the laying out of a highway is not of public concern but is a matter of private and adversary nature. Without intending to admit the correctness of this argument, we do not care to discuss it. It departs from the real question in the case. That question is not the laying out of a highway but the removal of a grade crossing. If it be granted that the laying out of a highway as a separate affair, disconnected from anything else, is of an adversary or private nature, yet where the construction of a short portion of new highway, by way of alteration of an existing one, is the necessary incident to the removal of a grade crossing, then it becomes a public matter. It ceases then to be of a private and adversary nature, and rises to a question of public concern, in respect to which the state's attorney should properly act. The protection of human life is of the highest public concern, and the removal of grade crossings tends directly to the protection of life. The acts of the legislature are the exercise of the governmental power and duty to secure safe highways. It is stated in High on Extraordinary Remedies, sect. 431, that "when the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator at whose instigation the proceedings are insti-

tuted need not show that he has any special interest in the result, it being sufficient that he is a citizen and as such interested in the execution of the laws." The cases cited show that this is the rule when a private citizen on his own account, and without the intervention of any public officer, moves for a writ of mandamus. On the other hand some cases hold that in matters of public concern it is for the public officer exclusively to apply for the writ. Moses on Mandamus, 195; *Rex* v. *Merchant Tailors' Company*, 2 Barn. & Adol., 115; *Sanger* v. *Commissioners of Kennebec County*, 25 Maine, 291; *The People ex rel. Blacksmith* v. *Tracy*, 1 Denio, 617; *Willington* v. *Petitioners*, 16 Pick., 105; *People ex rel. Drake* v. *Regents of University*, 4 Mich., 98; *People ex rel. Russell* v. *Inspectors of State Prison*, id., 187; *Linden* v. *Supervisors of Alameda Co.*, 45 Cal., 6; *Heffner* v. *Commonwealth*, 28 Penn. St., 108. While the practice in this state has not been uniform, it certainly permits the state's attorney to prosecute in his own name alone. 1 Swift's Dig., 578; *The State* v. *New Haven & Hartford R. R. Co.*, 29 Conn., 539; *The State ex rel. Coe* v. *Fyler*, 48 Conn., 145.

The writ must be directed to those, and those only, who are to obey it. This is necessary, so that in case the command is disobeyed it may be certain who is to be proceeded against for the contempt. And a disregard of this rule is a sufficient ground for sustaining a motion to quash. High on Ext. Remedies, sect. 542. If the act commanded is to be done by a select body, then the writ should be directed to the select body. Angell & Ames on Corporations, sect. 718. And where proceedings by mandamus against municipal officers to compel the performance of their official duties has been begun, a change in the membership of the office does not so change the parties as to abate the proceedings. Dillon on Municipal Corporations, 14th ed., § 874, note 3. So too where a mandamus has been brought against a municipal officer in his official capacity, upon whom service of process has been made, it may be continued against his successor without compelling the party aggrieved to begin *de novo*. Dillon on Municipal Corporations, 4th ed., § 184;

High on Ext. Rem., 443; Moses on Mandamus, 200; *Maddox* v. *Graham*, 2 Met. (Ky.,) 56; *Lindsey* v. *Auditor of Kentucky*, 3 Bush, 231; *City of Louisville* v. *Kean*, 18 B. Monr., 9, 13; *State ex rel. Soutter* v. *Common Council of Madison*, 15 Wis., 30; *People ex rel. Midland R. R. Co.* v. *Supervisors of Barnett Township*, 100 Ill., 332; *Pegram* v. *Commissioners of Cleveland Co.*, 65 N. Car., 115. There is no defect in respect to the parties.

3. The first ground of error set forth in the appellants' brief is, that " the change of grade made by the railroad company after the order will render its enforcement useless and ineffectual to accomplish the end designed."

This ground of error assumes certain facts to be in the case which as facts are not in it. In their return to the alternative writ the defendants, among other things, averred that after the order of the railroad commissioners was made, the railroad company had raised the grade of its track three feet higher than it was at the time of the passing of the order, and " that public convenience and necessity do not require the construction of the highways in question so as to pass over the bridge as now constructed by the railroad company, and public convenience and necessity do require that the highways in question be carried under the railroad tracks constructed at the grade that it now is." The state's attorney demurred to this part of the return and the Supeprior Court sustained the demurrer. Counsel for the appellants, many times in their brief and in their oral argument, speak of the facts averred in this part of their return as though they were facts in the case for all purposes, in the same way that they would be if they had been established by evidence and found by the court. They say it is " admitted by the demurrer "—" conclusively admitted," etc., with various repetitions, that public convenience and necessity do not require the lay-out of the pieces of new highway ordered by the commissioners.

This is a use of the facts alleged in a pleading to which a demurrer has been interposed, entirely unwarranted by law. " A demurrer neither asserts nor denies any matter of *fact*,

but merely advances a legal proposition, namely, that the pleading demurred to is insufficient in the law." Gould's Pleading, chap. 9, sect. 2. A demurrer admits facts that are well pleaded in that it does not deny them, yet the admissions can be used only for the purposes of the argument on the demurrer. It is not evidence for the party alleging the facts demurred to. Chitty's Pleading, 662; *Pease* v. *Phelps*, 10 Conn., 62; *Crogan* v. *Schiele*, 53 Conn., 208. And when a demurrer is sustained the facts alleged in the pleading demurred to are not in the case.

The statute says that the railroad commissioners, when in their opinion public safety requires an alteration in a highway, may order it, etc. The return speaks of "public convenience and necessity." If this expression, "public convenience and necessity," means something different from "public safety," then the demurrer was properly sustained, because the return was not responsive to the writ and did not show any excuse for disobeying it. If, on the other hand, the words "public convenience and necessity" in the return mean the same thing as the words "public safety" in the statute, we think the demurrer was correctly sustained for another reason. Whether or not public safety requires any change of a highway at a grade crossing, to the end that such crossing may be removed, is a question that the legislature has entrusted solely to the railroad commissioners as an original one, and to the Superior Court only by an appeal from their doings. The Superior Court on the hearing of the mandamus had no authority to pass upon that question. No appeal having been taken from the decision of the commissioners that question was *res adjudicata*. The effort to re-try it by the return was clearly irregular. But if everything be granted that the appellants urge, their conclusion would not follow. The mandamus would not become fruitless. The grade crossing would still be removed, only in a little less convenient manner.

4. The third ground of error is, that "the order and the alternative and peremptory writ are each indefinite and un certain" without the map referred to therein.

We assent to everything said in the argument to the effect that any order which is to be enforced by a mandamus should be clear and certain, so that the respondent may know the precise thing he is to do. Obviously no greater certainty can be required in the alternative or peremptory writ than in the order itself. The order of the railroad commissioners was in the nature of a judgment, in respect to which the mandamus is an execution. Mandamus is final process. If it was not the duty of the defendants to lay out the designated portions of highway by reason of that order, it was not made such by reason of anything contained in the alternative writ. Here again the objection stated is not the one argued. The real objection under this head is, not that the order is uncertain, but that it was not sufficiently published to the defendants. It is not claimed that the order as it exists in the office of the railroad commissioners is indefinite or uncertain. But the defendants insist that they are under no duty to obey that order until a copy of it with the map was served upon or left with them; that they were under no obligation to take notice of anything on file or recorded in the office of the railroad commissioners. The fallacy of this claim can best be illustrated by an example. Take the common case of a highway laid out by a committee of the Superior Court. A report laying out the highway, containing a survey and often accompanied by a map, is made to the court, and is incorporated into a decree, and recorded and left on file in the office of the clerk of the court. No copy is required to be furnished to the town or the selectmen. They would be bound to take notice of the contents of such report, of the survey therein, and of any map that might be attached thereto. Putting the report on file is, in the eye of the law, a personal communication of its contents to the town and its selectmen. If they neglected to build the highway so laid out, or to open it for public travel within the time fixed in such decree, there can be no doubt but what it could be enforced by mandamus. And it is certain that the writ would be directed to the selectmen; and it is equally certain that the selectmen would not be heard to say

that they did not know the thing ordered in the committee's report. Having been parties to the proceedings they would be presumed to know what the report contained. If they were ignorant it would be from their own neglect. Now the actual case in hand is almost exactly like the one supposed. The town of Branford and its selectmen were notified of the time and place of the hearing before the railroad commissioners. They were parties to the proceedings; they were present and were heard; they were notified of the decision. They knew it was on file and recorded in the office of the railroad commissioners—an office no less public than the office of the county clerk, and where they could examine and obtain copies of a decision equally well. We think they were bound to take notice of the contents of that decision. As in the case supposed the selectmen would not be heard to allege their own ignorance, we see no good reason why they should be so heard in the actual one. The objection if it should be made that the alternative writ is defective because it refers to the map as on file in the office of the railroad commissioners, instead of having a copy attached, is one of form, of which advantage could be taken only by the motion to quash. *Fuller* v. *Plainfield Academic School*, 6 Conn., 532.

5. The fifth ground of error is :—first, that the application is not verified by an affidavit. In applications brought by a public officer for the enforcement of public rights an affidavit is not necessary. *State* v. *Wilmington Bridge Co.*, 3 Har. (Del.,) 312. Second, that the Superior Court, after the appeal was perfected, issued the peremptory writ and immediately recalled it. If this was an error it was one of practice, and one which did the defendants no injury, and so cannot be noticed here.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.