FOX v. THE TRINIDAD WATERWORKS COMPANY ET AL.

MANDAMUS—PARTIES—SUCCESSOR IN OFFICE.

Mandamus against F., a city treasurer, to compel the payment of cer-
tain city warrants.   Trial was had after the expiration of his term
of office, and after he had turned over the funds, etc., to his suc-
cessor.   *Held,* that it was erroneous to issue a writ commanding
him to pay the warrants, and that no writ could run against his
successor without having first brought him in as a party.

*Appeal from the District Court of Arapahoe County.*

Mr. JOSEPH C. HELM and Mr. EVERETT BELL, for appel-
lant.

Messrs. YEAMAN & GOVE, for appellees.

BISSELL, J., delivered the opinion of the court.

The water supply of the city of Trinidad is furnished by the Trinidad waterworks. According to the usual practice of cities and waterworks companies, hydrants were placed at various points, and in other ways water was furnished for the use of the municipality. From time to time, the company rendered bills to the city, which were passed on by the common council, which issued warrants on the treasury in payment. Only two lots of warrants are involved in this litigation. There were twenty-five, numbered from 5896 to 5920, for $500 each, issued in November, 1892, to The Trinidad Waterworks Company. This lot of warrants was turned over to F. D. Wight as security on some transaction between the company and other parties. There was another series, seven in number, numbered from 6144 to 6150, issued in March, 1893, in liquidation of bills of the waterworks rendered to the city, which were purchased by the First National Bank of Central City, and held by them at the time this litigation started. The warrants were presented for payment, and, there being no funds in the treasury, were properly indorsed, to insure interest to the holder, and held until the latter part of 1894, when the holders demanded payment of the appellant, Fox, who was then the city treasurer. At the time of the demand there was in the treasury $16,510.43 which was properly applicable to the liquidation of these claims. The treasurer refused payment. It seems there was some controversy between the Waterworks Company and the city respecting the terms and the performance of the contract, which led to a suit by the city against the company to cancel the warrants. The city failed in the suit, and prosecuted a writ of error to the supreme court, which is now pending. The disagreement led the city administration to resist the payment of these claims until the question at issue between the city and the corporation should be finally

determined.    Whereupon the First National Bank of Central City instituted proceedings by way of mandamus, recited the issuance of the warrants, their title, the demand for payment, and the presence of funds in the treasury to pay the claims.    About the same time, the Waterworks Company started similar proceedings on the twenty-five warrants which they held, alleging whatever was necessary to make out a case on paper.    The proceedings were begun in Trinidad, but by stipulation both were removed to Arapahoe county, there consolidated and tried as one suit.    Evidence was introduced to show the rendition of the bills to the city, their acceptance and allowance by the city government; the order of the council directing the warrants to issue; the issue and presentation for payment, with the requisite proof respecting the condition of the city treasury.    It was clearly shown there was money in the treasury applicable to the payment of such claims, and the treasurer, Fox, turned over to his successor $17,818.24.    It will be assumed nothing was lacking in the proof to show the petitioners' right to a writ, and the judgment directing it would of necessity be affirmed had it been duly entered against the proper parties.    The trial disclosed the fact that Fox was not then city treasurer.    He held the office at the time of the demand and the commencement of the proceeding.    The relators, however, put him on the stand, and, so far as might be by that kind of testimony, proved that he had gone out of office on the 24th of April preceding, and had been succeeded by A. L. Branson, who was on the 7th of May, 1895, the date of the hearing, then city treasurer of Trinidad.    Fox testified to his proceedings when he went out of office, which included the turning over to his successor, Branson, of the specific fund which was alleged to be applicable to the payment of these claims.

The only reason which he gives for refusing to pay the warrants is found in his statement of the policy of the city government, which was to refuse to pay any of the Waterworks Company's claims until the validity of these warrants should be finally settled by the supreme court in the litiga-

tion which was then pending.  On the conclusion of the
testimony, the court being sufficiently advised, found the
facts to be as stated in the petitions.  There was likewise a
finding that Fox's term of office as treasurer had expired on
the 23d of April, 1895, and that he had been succeeded by
Branson, who was in fact the city treasurer of Trinidad at
the time the judgment was rendered, and that he then held
all the moneys in the water fund of the city.  On this basis
the court rendered judgment that a peremptory writ be
issued, addressed to the defendant, John H. Fox, and to his
successor, A. L. Branson, commanding them and each of
them to pay the warrants described in the alternative writs
from money in the water fund of the city in the order of
their registration.  No attempt was made to bring Branson
into the litigation, notwithstanding it clearly appeared on
the hearing that Fox was out of office and Branson in and
in custody of the particular fund which was sought to be
reached by these proceedings.  The necessity of some judg-
ment against Branson must have been apparent to the court
and counsel, or the judgment would not have run against
him.  Why the writ was directed to issue as against Fox,
who was shown not to have custody of the funds and to be
unable to answer the judgment, is not apparent.  According
to our views of the law, the whole case turns upon what
has just been stated respecting the judgment.

Service of process of some description, either actual or
constructive, is by all courts held indispensable to the exer-
cise of jurisdiction over the person.  A constructive service
may be sometimes as effectual to confer upon the court
power to enforce its judgments as the actual service of a
writ.  If this be ever true, the present case presents none of
the conditions essential to the application of the principle.
These proceedings were by way of mandamus to compel the
custodian of a particular fund to apply it to the satisfaction
of warrants which the petitioners held.  The existence of
the fund was established.  The regularity of the warrants
cannot be questioned on this hearing, the title of the peti-

tioners is not disputed, and it therefore follows the claimants were entitled to relief, and the only inquiry is whether they succeeded in giving the court jurisdiction to enforce that relief by the appropriate judgment. We recognize a very wide distinction between certain decisions of the supreme court of the United States and those of some state courts under analogous conditions. Wherever the duty to be performed is a personal one, and the thing is to be done on behalf of a corporation, over which the court may exercise jurisdiction, the supreme court undoubtedly holds the end of the officer's term abates the suit which has been begun to enforce his performance of the particular duty. It has accordingly been held in several well considered cases that since the government cannot be coerced, the official of that government who goes out of office is no longer subject to the operation of the writ of mandamus. *The Secretary v. McGarrahan*, 9 Wall. 298; *United States v. Boutwell*, 17 Wall. 604.

A very broad distinction is recognized, even by that court, between cases where the duty is a personal one, and where it is to be performed in a representative capacity, and the person on whom the writ is served really stands as and for the corporation whose officer he is and whose duty may be termed a continuing one, and therefore enforceable as against the successor in office as well as against the individual towards whom the writ was originally directed. *Commissioners v. Sellew*, 99 U. S. 624; *Thompson v. United States*, 103 U. S. 480.

The courts of the different states do not as a rule recognize the distinction which is thoroughly settled in the federal jurisdiction by these adjudications. It must be conceded, as a general proposition, the state courts hold the suits do not abate, whether the duty be a personal one or one to be performed on behalf of a corporation whose representative the individual may be against whom the suit is brought. We are not particularly concerned with this very close and narrow distinction between the cases, since, according to our

view, whether the suits do or do not abate, a judgment may
not be rendered against the successor, unless in some way he
is brought within the jurisdiction of the court and have an
opportunity to perform the act which he will be ultimately
adjudged to do if the judgment go against him.    We think
the present case falls very clearly within the distinction rec-
ognized in the 103 United States, and the act to be performed
is to be done by the treasurer as the representative of the
municipality, and the suit is really, though indirectly, one
to compel the city authorities to perform the contract into
which they entered.    The treasurer is the person who is the
custodian of the fund, and who can be directly reached by
the process and be compelled to pay the money to the indi-
viduals entitled to it.    It is the only substantial relief which
the petitioners can obtain.    The case, therefore, comes very
clearly within nearly all the authorities on this question.
The only remaining inquiry is whether it was essential to
make Branson a party to the proceedings in order to obtain
a judgment against him.    We cannot conclude otherwise.
No argument *ab inconvenienti* can be drawn from the situa-
tion.    The suit was begun during the continuance of Fox's
term, but the actual trial was had after he had gone out of
office and after his successor had come into the possession of
the funds sought to be reached by the proceeding.    All these
facts appeared on the trial and were probably known to the
litigants before the case was actually heard.    The possibility
of issuing a second alternative writ and bringing Branson in
was clearly open to the petitioners.    To pursue this course
would neither have deprived them of a remedy, nor resulted
in any substantial delay.    Under the existing circumstances,
the court would have ordered him to answer instanter and
the case would have proceeded to judgment with all reason-
able and convenient speed.    A critical examination of the
authorities which have been cited shows an almost universal
admission of the propriety and the necessity of pursuing this
course in cases of this description.    High's Extraordinary
Legal Remedies, sec. 440, *et seq.* ; Mechem on Public Officers,

sec. 940; Dillon's Mun. Corp., vol. 2, sec. 884; *The People ex rel. v. The Supervisor*, 100 Ill. 332; *Hardee v. Gibbs*, 50 Miss. 802; *Lindsley v. Auditor*, 3 Bush, 231; *State's Attorney v. Selectmen of Branford*, 59 Conn. 402.

Many other cases might be referred to in which would be found expressions concurring with the general principle involved in the present decision. It has seldom happened, however, that the decisions have turned on the particular proposition respecting the necessity to make the successor a party in order to obtain a valid judgment. The necessity is recognized in many cases which hold the suit does not abate by the expiration of the term of office, though they only apparently refer to the continuance of the proceedings against the successors who are charged with the duty. It might almost be called a construction established by concession rather than by specific judgment on the especial point. Since all courts agree that no person may be bound, save him against whom process has actually or constructively run, we are bound to hold it necessary to bring the successor in, in order to compel him to perform the judgment by paying over the money. The duty is a personal one, operative only on the person then holding the office, and the judgment must be entered against him to be enforceable by ultimate proceedings. It logically follows there can be no such thing as a constructive service on which to base a judgment which the successor can be compelled to perform by proceedings in contempt or otherwise.

The judgment is likewise irregular in having been entered against Fox as well as against Branson, the successor. We do not hold some judgment might not be properly entered against Fox on the showing that he had refused the demand, declined to pay the money, and had compelled the petitioners to incur costs in the establishment of their rights. This we do not decide. We simply hold no judgment directing him to pay over the money could properly be entered against him. It would be a vain order, which it would be impossible for him to execute, and therefore the judgment in that form

should not go against him. *People ex rel. v. Spruance,* 8 Colo. 319.

For these reasons we conclude there was error in the judgment, and it must be reversed and sent back for further proceedings in conformity with this opinion.

*Reversed.*